# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| TANGO TRANSPORT, L.L.C. | * | CIVIL ACTION NO. 08-0559 |
|---|---|---|
| VERSUS | * | JUDGE HICKS |
| TRANSPORT INTERNATIONAL POOL, INC. | * | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING[1]

Before the court is a motion to compel [Doc. # 65] filed by Plaintiff and Counter-Defendant Tango Transport, L.L.C. ("Tango"). The motion is opposed by Defendant and Counter-Plaintiff Transport International Pool, Inc. ("TIP"). For reasons assigned below, the motion is **GRANTED in part and DENIED in part**.

## BACKGROUND

The dispute in the above-captioned action revolves around a purchase and leaseback arrangement between Tango and TIP, pursuant to which TIP purchased approximately 384 trailers from Tango. These trailers were thereafter leased back to Tango by TIP under a single master lease agreement ("the Agreement") originally entered into by the parties in January of 2004. The first group of trailers subject to the Agreement consisted of 125 trailers purchased by TIP for the sum of $1,295,000. The second group of trailers consisted of 259 trailers purchased for the sum of $3,108,000. These 259 units were to be returned to Tango's Sibley, Louisiana,

---

[1] As this motion is not excepted within 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this order is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W).

yard at termination for pick up by TIP at TIP's expense. Tango subsequently leased an additional 81 trailers from TIP.

The dispute in this case primarily relates to the condition and repair state of these trailers when Tango began to return them to TIP in 2007. An addendum to the Agreement contained the following provision pertaining to the obligations of the parties regarding the condition in which the trailers were to be returned:

> Lessee agrees, at Lessee's sole cost, to keep each Vehicle at all times during the term and any renewal term of this Agreement in good operating condition, normal wear and tear excepted, and to replace with new parts any and all badly worn or broken parts, including but not limited to, tires, tubes, and brakes.
>
> . . .
>
> Lessee agrees to return each Vehicle to Lessor in good repair and operating condition, free of any structural damage.
>
> . . .
>
> Upon the return of all Vehicles to Lessor's location Lessee agrees to reimburse Lessor for the total amount of all repairs and replacements exceeding two hundred fifty dollars ($250.00) per vehicle calculated in the aggregate for all Vehicles listed on Schedule AB-1-18J9M.

*See* Doc. # 65, Ex. 1.[2]

According to Tango, the relationship between the parties began to sour when Tango

---

[2] It appears that there are other provisions in the contract regarding the condition in which the trailers were to be maintained. For example, the original contract contains a provision which states that "any vehicle not returned in good operating condition and otherwise as set forth herein shall remain leased hereunder and Lessee shall continue to pay lease payments required hereunder until the required repairs are completed by Lessee in a manner acceptable to Lessor, Lessee pays Lessor the actual or estimated cost of repair or Lessee purchases the vehicle in accordance herewith." *See* Doc. # 4, Ex. A. Another provision in a maintenance addendum states that "[e]ach vehicle shall be returned in good repair and operating condition as described above. Vehicles will be subject to Lessor's Turn In Conditions and Repair Standards. Any deficiencies will be charged to Lessee at the Lessor's National Repair Standards." *Id*.

started running out of room on its Sibley yard due to the fact that so many trailers were being stored there and TIP was not retrieving the trailers. Tango contends that TIP finally retrieved the trailers and, upon re-inspection, allegedly conducted its own repairs and billed Tango for such repairs. Subsequently, Tango contends, TIP retained outside counsel and demanded that Tango pay $565,060.24 in damages, delay rentals, and late fees within ten days, contending that it considered the non-payment by Tango a default under the agreement and that a lawsuit would be filed to recover the charges.

Thereafter, Tango filed the above-captioned action on the ground that it complied with its obligations under the agreement and therefore is not obligated under the agreement to pay TIP the $565,060.24. Tango seeks the recovery of reasonable storage charges resulting from the storage of the trailers following Tango's relinquishment of such trailers back to TIP in addition to a declaratory judgment to the effect that Tango is not liable under the agreement for the lease charges, damages, and late fees sought by TIP.

TIP subsequently filed a counter-claim alleging that by signing the Agreement, Tango agreed to timely and fully make payments to TIP in accordance with the Agreement, and that Tango is in default under the Agreement because it has failed to pay the $565,060.24 in lease charges, damages, and late fees. TIP further alleges that as a result of Tango's default, it is entitled to obtain possession of all of its trailers leased to Tango under all leases, regardless of whether there would otherwise be a default as to any given lease or any given trailer, including the 81 trailers mentioned above. TIP has subsequently been granted a Writ of Sequestration regarding the 81 trailers [Doc. #5].

As part of Tango's First Requests for Production of Documents, Tango sought: (1) all

documents which support or relate to TIP's claim for damages (Requests 4-8); (2) all photographs of the trailers (Request 9); (3) all documents relating to any repairs, maintenance, or any other type of work TIP claims to have done to the trailers (Requests 24 and 25); and (4) all documents relating to any subsequent sales by TIP of the trailers at issue, including documents which reflect the amount of the sales, the parties which purchased these trailers, and for trailers still held by TIP, the sales prices which TIP seeks on these trailers (Requests 21 and 29).[3] Tango contends that TIP has failed to comply with the above requests and seeks an order compelling it to do so. Tango also contends that the corporate representative TIP produced for the corporation's 30(b)(6) deposition, which took place in Shreveport, Louisiana, as opposed to Chester County, Pennsylvania, where TIP's principal place of business is located, was not sufficiently knowledgeable regarding the matters designated in the deposition notice.[4] According

---

[3] Request for Production 21 seeks any and all documents relating to the current disposition (i.e. whether they were sold or subsequently leased to another entity) of the over-the-road trailers which were the subject of the Agreement, including: (1) dates of sale or lease; (2) amounts of sale or lease; and (3) if not sold or leased, current status (i.e. available for sale or lease), and how long in that current status. Request for Production 29 seeks all documents which reflect the trailers which were the subject of the Agreement being listed for sale, including but not limited to, the following: (1) the date those trailers were listed for sale; (2) the description of the trailers listed for sale; (6) the amount the trailers were listed for sale; (7) the location of the trailers; (3) any offers made on the trailers for sale; and (4) any completed sales of the trailers, including the amount, the sales date, and the name and address of the buyer of the trailers. *See* Doc. #65, Ex. 4.

[4] Tango states that the deposition notice requested a deponent fulfilling the following requirements:

(1) The person most knowledgeable about what repairs were actually done by TIP to the trailers at issue in this matter, and if those repairs were performed[,] the dates the repairs were performed;

(2) The person most knowledgeable about what trailers were only "rebilled" for repair work TIP claims was required when Tango returned the trailers to TIP with no repair work actually being performed by TIP;

to Tango, when questioned regarding most of the designated matters, the deponent stated that he could only answer that the information existed and that he would have to access TIP's computer system in order to fully answer the question. Therefore, Tango seeks an order compelling TIP to produce a deponent for another deposition to be conducted in Shreveport, Louisiana, who can answer questions regarding the matters designated and an order compelling TIP to produce the documentation which the original deponent testified he could access from TIP's computer system.

## **LAW AND ANALYSIS**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The courts understand the rule to provide for broad and liberal discovery. *See Schlagenhauf v. Holder*, 379 U.S. 104, 114-5 (1964); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A party objecting to discovery "must state with specificity the objection and how it relates to the particular request being opposed, and not

---

(3) The person most knowledgeable about what documentation exists, if any, for any repair work actually performed by TIP;

(4) The person most knowledgeable about whether or not TIP took pictures of all trailers damages which exceed $250 on a trailer, and where those pictures are located;

(5) The person most knowledgeable about whether or not TIP allowed Dan Stipp to review/approve all rebills and pictures via email, and where those emails are located;

(6) The person most knowledgeable about whether or not TIP entered all repairs into TIP's "EMSMART" and where the documentation supporting those entries is located; and

(7) The person most knowledgeable about the subsequent disposition (i.e. whether they were sold or subsequently leased to another entity) and the dollar amount of any such sales of the over-the-road trailers which were the subject of the Lease Agreement at issue in this matter.

merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'" *Reyes v. Red Gold, Inc.* 2006 WL 2729412 (S.D. Tex. Sept. 25, 2006).

**I.  Requests for Product Nos. 4-8, 9, 24, and 25**

With regard to these discovery requests, Tango seeks an order compelling TIP to produce all documents which support or relate to TIP's claim for damages, all photographs of the trailers, and all documents relating to any repairs, maintenance, or any other type of work TIP claims to have done to the trailers.  In response to Tango's motion to compel, TIP states that in addition to the documentation it has already provided to Tango, it produced along with its opposition to the motion to compel 2,006 documents and two disks containing hundreds of photographs.  Tango acknowledges that, at this time, it has no evidence to suggest that TIP has any additional documentation regarding these discovery requests.  Accordingly, Tango's motion to compel on this ground is hereby **DENIED as moot**.[5]

**II.  Requests for Production Nos. 21 and 29**

Tango seeks the production of all documents relating to any subsequent sales by TIP of the trailers at issue, including documents which reflect the amount of the sales, the parties which purchased these trailers, and for trailers still held by TIP, the sales prices which TIP seeks on these trailers.  TIP objects to this request as irrelevant, over broad, and unduly burdensome.

Tango asserts that the information sought is relevant to the amount of repairs TIP claims were justified as well as whether TIP actually performed any of the repairs for which it has billed Tango.  According to Tango, it has ascertained that TIP has invoiced Tango for repairs on trailers when such repairs were never performed by TIP.  Rather, argues Tango, TIP sold the trailers to

---

[5] If, upon reviewing the newly-submitted documentation in full, Tango is unsatisfied with what TIP has produced, Tango is free to file another motion to compel on such ground.

third parties without performing any of the repairs for which it billed Tango.[6] According to Tango, this information not only demonstrates that certain repairs were not performed, but also calls into question the need for the repairs TIP claims it did perform. Tango argues that if the trailers were sold and are being operated for commercial use without the repairs, such is relevant to whether the repairs were necessary. Tango further argues that the market value of the trailers is relevant given its contention that the amount of repairs made by TIP to certain trailers exceeds the market value of the trailers and, therefore, the repairs were not appropriate. Citing its contractual obligation to reimburse TIP for any repairs and replacements exceeding $250, Tango relies on the "fundamental premise of contract law that if the cost of repairs exceeds the market value, only the market value is recoverable since it is unreasonable to spend more than an item is worth."

TIP counters that the market value of the trailers and whether TIP later sold the trailers has no relevance to Tango's obligation to pay for the damages to the trailers given that nothing in the contract relieves Tango of its obligation to pay for damages if the charged damages exceed the market value of the trailers. TIP also objects to the production of this information on the ground that it is business proprietary information and is confidential because it seeks information regarding the buyers of TIP trailers.

The undersigned finds that Tango is entitled to the production of information regarding any sales of the trailers. Given that a central issue in this case is whether the repairs for which TIP billed Tango were necessary and/or were actually performed, information regarding sales to third parties of trailers involved in this litigation is clearly relevant as Tango seeks to determine

---

[6] Attached to Tango's motion to compel are two letters prepared by Tango's expert witness stating, in summary, that based on his inspection of certain trailers at third party locations, TIP billed Tango for repairs that were not actually performed on such trailers. *See* Doc. # 65, Ex. 3-B, 3-C. Tango contends that TIP billed it $17,500 for repairs on the trailers referenced in these letters.

7

(1) whether the repairs were performed; (2) whether the repairs were necessary; and (3) whether any repairs had to be performed in order to allow the trailers to pass inspection and place them in good operating condition or whether they were already in such condition when purchased from TIP.

Moreover, with regard to any sales price information, although TIP argues that Tango is not entitled to this information because Tango's obligations under the Agreement are not affected by whether the cost of the repairs exceeds the market value of the trailer, a motion to compel is not the vehicle by which to decide this issue. The only determination that is pertinent at this point in the litigation is whether the information sought is relevant to any party's claim or defense. Based on the arguments made in Tango's motion to compel, it seems clear that one of Tango's defenses in this case will be that it should not be charged for certain repairs because the cost of those repairs exceeded the market value of the trailers on which they were performed, and the sales price of the trailers is clearly relevant to determining their market value. Whether this argument will prevail is an issue for another day.

TIP asserts in conclusory fashion that information regarding subsequent sales is proprietary and therefore confidential. However, TIP has not sufficiently demonstrated to this Court how this information is confidential or proprietary, or how the risk of any harm resulting from its production could not be alleviated by a protective order, for which TIP is free to move if desired. *See e.g. Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D.Tex. 2003) (noting that there is no absolute privilege for confidential or proprietary information and that the party opposing discovery bears the burden of establishing the need for confidentiality).

Accordingly, Tango's motion to compel on this ground is **GRANTED**, and TIP shall produce the information sought in Requests for Production 21 and 29 within fifteen (15) days of the date of this order.

**II. Motion to Compel Production of Deponent**

As noted above, Tango attempted to take the oral deposition of TIP pursuant to Federal Rule of Civil Procedure 30(b)(6) by requesting a corporate representative knowledgeable regarding certain matters. Tango contends that when questioned regarding all but two of the matters designated, the individual produced by TIP stated that he would have to access TIP's computer system in order to answer the questions. Accordingly, Tango seeks an order compelling TIP to produce the documentation regarding which the deponent stated he could answer questions and, in addition, an order compelling TIP to produce a deponent, in Shreveport, Louisiana, the same location as the previous deposition, who can answer questions regarding the designated matters.

TIP responds that Tango fails to acknowledge that it agreed to proceed with the deposition of TIP's corporate designee despite having been informed by TIP that it was still in the process of gathering the documentation to be produced and that Tango would not have access to it prior to or during the deposition, and yet Tango made no move to postpone or cancel the deposition. TIP also states that after Tango suspended the deposition because the deponent could not answer some of Tango's questions without accessing his computer, TIP's counsel offered to have the deponent retrieve his computer from his hotel room so that he could answer such questions, but Tango refused. As for the documentation in the TIP computer system, TIP states that in conjunction with its response to the motion to compel, it produced all documents referenced in the deposition notice, with the exception of the previously discussed documentation regarding trailer sales. Finally, although TIP does not object to a second deposition of its corporate designee, it contends that pursuant to Rule 30(b)(6), the deposition of a corporate designee should take place where the corporate designee lives and works, and at the location that is most convenient for the witness, which in this case is Chester County, Pennsylvania.

9

Tango argues that TIP never informed Tango that the deponent produced would not be able to answer questions without accessing TIP's computer system nor did it bother to have the witness bring any method by which he could access the computer system. Tango acknowledges that TIP offered to have the witness retrieve his computer from his hotel room in order to answer the questions, but states that TIP did not intend to allow Tango access to the information on the computer. Tango also acknowledges that typically the deposition of a corporate designee is taken at the corporation's principal place of business; however, Tango contends that given TIP's failure to produce an designee who could answer Tango's questions, a second deposition should take place in Shreveport.

TIP is correct that the "'deposition of a corporation by its agents and officers should ordinarily be taken at its principal place of business . . . especially when, as in this case, the corporation is the defendant.'" *Turner v. Kan. City S. Ry. Co.*, 2008 U.S. Dist. LEXIS 84865, *3 (E.D. La. Sept. 24, 2008) (citations omitted). Nonetheless, "[a] party may overcome the presumption . . . by showing that peculiar circumstances justify conducting the deposition at a location other than the corporation's principal place of business." *Id*. In considering whether a party has overcome the presumption, courts are guided by the following factors: (1) counsel for the parties are located in the forum district; (2) the deposing party is seeking to depose only one corporate representative; (3) the corporation chose a corporate representative that resides outside the location of the principal place of business and the forum district; (4) significant discovery disputes may arise and there is an anticipated necessity of the resolution by the forum court; and (5) the claim's nature and the parties' relationship is such that an appropriate adjustment of the equities favors a deposition site in the forum district. *Id*. at *4 (citation omitted).

Tango does not address the above factors or demonstrate how such factors lead to the conclusion that a second deposition should take place in Shreveport rather than Chester County,

Pennsylvania. Tango merely argues that TIP's conduct in producing a corporate representative for the initial deposition who could not provide any substantive answers to the majority of the matters which were designated in the deposition notice is sufficient to overcome the presumption that a second deposition should take place at TIP's principal place of business. At the very least, argues Tango, TIP should have ensured that the deponent had his computer in his possession during the deposition.

While TIP was certainly under a duty to ensure that its corporate representative was knowledgeable on the designated matters and prepared to answer questions on behalf of the corporation, and while TIP's corporate representative could certainly have been more prepared for the deposition in this case,[7] the undersigned nonetheless finds that Tango has failed to demonstrate that a second deposition should take place in Shreveport. First, the mere fact that the deponent needed to access TIP's computer system in order to answer some of Tango's questions does not indicate that TIP failed to produce an adequate representative; Tango could hardly expect any individual to recite from memory all of the information sought in the deposition notice. Second, although the corporate designee ideally should have had his laptop with him at the deposition, the fact remains that when Tango suspended the deposition, TIP offered to have the deponent retrieve his laptop from his hotel room so that he could answer Tango's questions. Had Tango simply allowed the deponent to do so, the instant dispute could seemingly have been avoided.

Tango argues that although TIP offered to have the deponent retrieve his laptop, TIP was not going to allow Tango access to the information on the computer on which the deponent was

---

[7] See *Cox Communications of La., LLC v. I.C. Fiber Louisiana, LLC*, 2003 WL 22326400, *1 (E.D.La. Oct. 6, 2003) ("Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject."; "The corporation's duty includes the requirement that it prepare the deponent adequately to testify on the corporation's behalf.").

to rely.  However, TIP contends, and Tango does not dispute, that it made Tango aware prior to the deposition that it was still in the process of gathering documents to be produced and that Tango would not have access to the requested documentation prior to or during the deposition, yet Tango made no attempt to cancel or postpone the deposition.  Even assuming Tango was unaware of this fact, given that TIP agreed to conduct the deposition in Shreveport when it was not required to do so, and agreed to pay all of the deponent's expenses resulting therefrom, there was no reason Tango could not have allowed the deponent to retrieve his laptop and then proceeded with the deposition, especially given that the deposition had only lasted approximately thirty minutes at the time it was suspended.  Tango was free to seek a second deposition if a review of the later-submitted documentation revealed the need for one.  Instead, Tango's refusal to allow the deponent to retrieve his laptop assured that a second deposition would be necessary, and Tango's argument that the TIP's corporate representative should be required to travel to Shreveport again for such deposition is not persuasive.

TIP indicates that it has no objection to producing the corporate representative for another deposition; therefore, to the extent Tango's motion to compel seeks an order compelling TIP to produce a deponent who can answer questions regarding the matters in the deposition notice, the motion is **GRANTED**.  However, to the extent Tango's motion to compel seeks an order requiring such deposition to take place in Shreveport, Louisiana, the motion is **DENIED**.

With regard to Tango's request for an order compelling TIP to produce the documentation which the corporate representative testified he could retrieve from TIP's computer system, TIP states that with the exception of the above-discussed information regarding sales of the trailers, which the undersigned has already ordered TIP to produce, it produced the documentation in conjunction with the filing of its response to Tango's motion to compel.  Despite continuing to seek an order regarding the documentation, Tango does not specifically

address TIP's contention that it has already produced such documentation or refer to any specific information that has yet to be produced other than the sales information. Therefore, with the exception of the above-discussed information regarding sales of the trailers, Tango's motion to compel is **DENIED as moot** to the extent it seeks an order compelling TIP to produce documentation referred to by the corporation representative during his deposition.

## CONCLUSION

For the forgoing reasons, Tango's motion to compel with regard to Requests for Production 21 and 29 is **GRANTED**, and TIP shall produce the information sought within fifteen (15) days of the date of this order. The motion is also **GRANTED** to the extent it seeks an order compelling TIP to produce a deponent who can answer questions regarding the matters in the deposition notice, but **DENIED** to the extent it seeks an order requiring such deposition to take place in Shreveport, Louisiana. Finally, to the extent it seeks an order compelling TIP to produce documentation referred to by the corporation representative during his deposition, the motion is **DENIED as moot.**

THUS DONE AND SIGNED in Chambers at Monroe, Louisiana, this 21st day of May, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE