UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TANGO TRANSPORT, L.L.C. | CIVIL ACTION NO. 08-559 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TRANSPORT INTERNATIONAL POOL, L.L.C. | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM ORDER

Before this Court is a Motion for Partial Summary Judgment [Record Document 109], filed on behalf of the Plaintiff and Counter-Defendant, Tango Transport, Inc. For the reasons stated herein, Tango's Motion for Partial Summary Judgment is **GRANTED.**

### FACTUAL BACKGROUND

In January of 2004, Tango Transport, Inc. ("Tango") and Transport International Pool, Inc. ("TIP") entered into a sale-leaseback agreement whereby TIP purchased 125 dry van trailers from Tango for One Million Two Hundred Ninety-Five Thousand Dollars ($1,295,000.00) and then leased the trailers back to Tango. See Record Document 109, Ex. A-4.  Concerning the lease portion of the agreement, the parties entered into Vehicle Lease Agreement No.1-BN1E6 ("VLA"), along with Schedule AB-1 and Schedule AB-2, for the lease of the trailers to Tango for continued use in Tango's business for a period of thirty-six (36) months. See Record Document 109, Ex. A-2 (VLA and Schedules AB-1 and AB-2). At that time, the parties also executed a maintenance addendum, "Addendum M/N-1," which is specifically referenced in the VLA and purports to replace Sections 4, 5(A) and 5(B) of the VLA. See Record Document 109, Ex. A-2 (Addendum M/N-1). Thereafter, the parties executed "Additional Terms Addendum A/T," which also purports to replace

Sections 4, 5(A) and (B), as well as Section 11 of the VLA.  <u>See</u> Record Document 109, Ex. A-3 (Addendum A/T).

In July of 2004, Tango and TIP entered into a second sale-leaseback agreement whereby TIP purchased an additional 259 trailers from Tango for a purchase price of Three Million One Hundred Eight Thousand Dollars ($3,108,000.00) and then leased those trailers back to Tango for use in Tango's business operations.  <u>See</u> Record Document 109, Ex. A-5.  The parties executed Schedule AB-1-I8J9M, which was made a part of the VLA and Addendum M/N.  The parties also executed another "Additional Terms Addendum A/T" purporting to replace Sections 4, 5(A) and (B), and 11 of the VLA.  <u>See</u> Record Document 109, Ex. A-5.

The VLA provides that Tango shall return each trailer to TIP "in good condition, normal wear and tear excepted, with tires and brakes in accordance with Section 4 hereof or any maintenance addendum executed in connection herewith."  <u>See</u> VLA, Section 21.  Upon Tango's return of the trailers to TIP, TIP made a claim upon Tango for various lease charges and damages.  <u>See</u> Record Document 1 (Complaint).  Tango disagreed with TIP's interpretation of the terms and conditions of the VLA, including the various addendums/additions thereto, and filed the present action against TIP "seeking a declaration with respect to parties rights, liabilities and obligations as relates to the terms and conditions of the parties' agreements with respect to [TIP's] claim for various lease charges, damages and late fees under the terms of said agreements."  <u>Id.</u> at ¶ 10.  In addition, Tango is seeking "to recover reasonable storage charges for storage of the leased vehicles when [TIP] failed to take possession of the leased vehicles in a timely and reasonable manner."  <u>Id.</u> at ¶ 8.  TIP filed a counterclaim against Tango alleging breach

of contract and breach of guaranty, seeking damages in the amount of Six Hundred Eighty-Six Thousand Five Hundred Seventy and 74/100 Dollars ($686,570.74), plus additional late fees, all future lease payments, charges, expenses and fees as set out in the lease agreements.  See Record Document 62 (Third Amended Complaint).

Tango now moves for an order of partial summary judgment against TIP providing that the terms and conditions contained in both "Additional Terms Addendum A/T" replaced the terms and conditions set forth in the "Maintenance Addendum M/N -1."  Further, Tango asks the Court to declare that the plain language of the "Additional Terms Addendum A/T" means, with respect to Tango's obligation to "reimburse" TIP for "repair and replacement costs," (1) Tango is entitled to a deduction of the total number of all the lease trailers times $250 (i.e., a deduction of $31,250.00 for the first group of 125 trailers and $64,750.00 for the second group of 259 trailers), and (2) Tango's responsibility for payment to TIP for the return condition for the lease trailers is for the amount of costs actually incurred by TIP.  See Record Document 109.  TIP opposes this motion.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Id., 477 U.S. at 322, 106 S. Ct. at 2552. If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. All factual controversies must be resolved in favor of the nonmovant. Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 456 (5th Cir. 2005).

**LAW AND ANALYSIS**

**A.    "Additional Terms Addendum A/T" vs. "Maintenance Addendum M/N-1"**

At the time Tango and TIP executed the VLA in January of 2004, "Maintenance Addendum M/N - 1" ("Addendum M/N") was executed and specifically incorporated into the VLA:

> 31. SCHEDULES/ADDENDA. In addition to Schedules AB and C/I, the following Schedules are hereby made a part of this Agreement:
>
> Addendum M/N

[Record Document 109, Ex. A-2, (VLA, Section 31)]. Addendum M/N provides: "Sections 4, 5(A) and 5(B) of the Agreement are hereby deleted from the Agreement and are replaced by the following: . . ." Id. (Addendum M/N).

With respect to the initial 125 trailers listed on Schedules AB-1 and AB-2 of the VLA, the parties executed the "Additional Terms Addendum A/T" ("Addendum A/T") shortly thereafter.[1] The addendum was signed by Tango on February 11, 2004 and by TIP on July 21, 2007.  Id. (Addendum A/T).  Addendum A/T states: "Lessor and Lessee agree that Section 4, 5a) and b), and 11 of the VLA are deleted in their entirety and are hereby replaced by the following: . . ."  Id.

Similarly, in July of 2004, the parties executed the VLA and Addendum M/N with respect to the additional 259 trailers listed on AB-1-I8J9M. [Record Document 109, Ex. A-5].  Another "Additional Terms Addendum A/T" was executed by Tango on July 22, 2004 and by TIP on July 27, 2004.  Id.  The addendum expressly referenced the 259 trailers listed on AB-1-I8J9M and, in all other respects, was identical to the previous Addendum A/T executed by the parties.  Id.

Tango contends the terms and conditions contained in both "Additional Terms Addendum A/T" replaced the terms and conditions set forth in the previous "Maintenance

---

[1]Tango and TIP disagree as to whether Addendum A/T was negotiated specifically for the sale-leaseback transaction at issue, or whether Addendum A/T was a form document previously utilized by TIP.  Each party submitted the affidavit and deposition testimony of corporate representatives attesting to the "intent" and/or "purpose" of the addendum, and TIP submitted a "playbook" that summarizes the turn-in conditions and requirements from the lease documents for the customer and TIP branch receiving the trailers.  See Record Document 119, pp.17-18; Record Document 142, Exs. A-C.  But "[w]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone.  It speaks for itself and a meaning cannot be given to it other than that expressed.  Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence."  East Crossroads Center, Inc. v. Mellon-Stuart Co., 416 Pa. 229, 230-31, 205 A.2d 865, 866 (1965).  Because the Court finds the documents comprising the contract in this matter are "clear and unequivocal," see infra, the parties' extrinsic evidence is inadmissible and the parties' intent must be ascertained from the four-corners of the document.

Addendum M/N-1." See Record Document 109. In opposition, TIP argues that, by the plain language of the documents, Addendums A/T do not replace Addendums M/N. Instead, TIP contends the existence of the terms and conditions found in both Addendums A/T and Addendums M/N is necessary and reasonable in this case. See Record Document 199. Hereinafter, both Addendums A/T and both Addendums M/N will be considered as one and referred to in the singular.

The proper interpretation of a contract is a question of law to be determined by the Court. Standard Venetian Blind Co. v. American Empire, Ins. Co., 503 Pa. 300, 304, 469 A.2d 563, 566 (Pa. 1983). When interpreting a contract, the Court's goal is to determine the intent of the parties as manifested by the language of the written instrument and give effect to all provisions in the contract. Id., 503 Pa. at 305, 469 A.2d at 566; Com., Dept. of Transp. v. Manor Mines, Inc., 523 Pa. 112, 119, 565 A.2d 428, 432 (Pa. 1989). Under Pennsylvania law,[2] "contracts are enforceable when parties reach mutual agreement, exchange consideration and have set forth terms of their bargain with sufficient clarity." Biddle v. Johnsonbaugh, 444 Pa.Super 450, 458, 664 A.2d 159, 163 (1995). Once a contract has been formed, it may be modified only if both parties consent to the modification and the modification is founded upon valid consideration. Corson v. Corson's, Inc., 290 Pa.Super 528, 532, 434 A.2d 1269, 1271 (Pa.Super. 1981), citing Wilcox v. Register, 417 Pa. 475, 207 A.2d 817 (1965).

---

[2]Section 34 of the VLA states, in pertinent part: "This Agreement and the parties' rights and obligations hereunder shall be governed by the laws of the Commonwealth of Pennsylvania."

As an initial matter, the Court notes that TIP does not claim Addendum A/T was executed without its consent, that it is not founded upon valid consideration, or that it is otherwise invalid or unenforceable. Instead, TIP maintains that the terms and conditions of Addendum A/T and Addendum M/N are complementary and can co-exist. The Court disagrees.

Addendum M/N purports to replace Sections 4, 5(A) and 5(B) of the VLA with the following terms and conditions:

> At all times during the Lease Term and any renewal thereof, Lessee shall keep each Vehicle in good repair and operating condition, normal wear and tear excepted and replace with new parts any and all badly worn or broken parts, including, without limitation, tires, tubes, brakes, and asset tracking or monitoring equipment. Lessee shall obtain Lessor's written consent prior to performing any repair or service on any asset tracking or monitoring equipment.
>
> Lessee shall perform pre-trip safety inspections as required by DOT regulations for each Vehicle, including the maintaining of proper oil or grease levels on axles, proper inflation of tires, proper brake operation, including adjustments, and operable lighting, including replacement of lenses and bulbs, if required, on each Vehicle. Upon request, Lessee shall provide Lessor copies of the DOT required inspection, repair and maintenance records for each Vehicle.
>
> Each Vehicle shall be returned in good repair and operating condition as described above. Vehicles will be subject to Lessor's Turn in Conditions and Repair Standards. Any deficiencies will be charged to Lessee at the Lessor's National Repair Standards.
>
> Each Vehicle shall be returned to Lessor with original, non-recapped tires or equal quality of those on the Vehicle when delivered to Lessee and in good operating condition with a remaining per tire original tread depth of not less than 100% of the tread depth as at delivery. In the event that a vehicle is returned to Lessor with the remaining tread depth of less than that specified,

> Lessee shall pay the Lessor the proportionate deficiency times $25.95 per 1/32nd of tread wear deficiency.[3]
>
> Each Vehicle shall be returned to Lessor with brakes in good operating condition and having a remaining brake lining depth meeting DOT standards.
>
> Each Vehicle shall be returned to Lessor with any and all asset tracking or monitoring equipment in good operating condition.

[Record Document 109, Ex. A-2 (Addendum M/N)].

Addendum M/N was executed at the same time as the VLA and specifically incorporated into the VLA through Section 31.[4] See supra. Thus, from the moment the VLA was executed, the terms and conditions set forth in Addendum M/N replaced Sections 4, 5(A) and 5(B) of the VLA.

The parties subsequently executed Addendum A/T which purports to replace Sections 4, 5(A), 5(B) and 11 of the VLA with the following terms and conditions:

> Lessee agrees, at Lessee's sole cost, to keep each Vehicle at all times during the term and any renewal term of this Agreement in good repair and operating condition, normal wear and tear excepted, and to replace with new

---

[3] Above this paragraph, the following notation is handwritten and initialed by Tom Turnbow, Tango's Chief Financial Officer: "Vehicle tires at delivery are recapped meeting DOT stan [sic]."

[4] Furthermore, Section 32 of the VLA provides:

32. ENTIRE AGREEMENT. This Agreement, together with all amendments, schedules and addenda, constitutes a single agreement and is not severable into separate contracts. This Agreement, together with all amendments, Schedules and Addenda, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior agreements and understandings of the parties, but without prejudice to Lessor's rights with respect to any breach of default by binding upon each party and their respective representatives, successors, and assigns. This Agreement may not be amended or altered in any manner except by a writing signed by duly authorized representatives of Lessee and Lessor.

[Record Document 109, Ex. A-2 (VLA, Section 32)].

>parts any and all badly worn or broken parts, including but not limited to, tires, tubes and brakes.
>
>Lessee further agrees that Lessee will perform pretrip safety inspections as required by DOT regulations for each Vehicle, including, but not limited to, the maintaining of proper oil or grease levels on axles, proper inflation of tires, proper brake operation including adjustments, and operable lighting including replacement of lenses and bulbs, if required, on each Vehicle. On request, Lessee shall provide Lessor copies of the DOT required inspection, repair and maintenance records for each Vehicle.
>
>Lessee agrees to return each Vehicle to Lessor in good repair and operating condition, free of any structural damage.
>
>The Vehicles shall be returned to Lessor with original or first time radial recapped tires in good operating condition with an average per tire tread depth of not less 7/32nds of one inch calculated by the type for all Vehicles listed on [the appropriate Schedule].
>
>In the event that any Vehicle is returned to Lessor with an average per tire tread depth less than that specified, Lessee agrees to pay Lessor the proportionate deficiency times $25.95 per 1/32nd of tread depth deficiency for each tire times the total number of such tires returned. Any tire returned damaged or with less than 4/32nds of usable tread shall, for purposes of calculating the deficiency, be considered to have 0/32nds of tread.
>
>The Vehicles shall be returned to Lessor with brakes in good operating condition and having an average per wheel brake lining thickness of not less than 50% of the original brake lining thickness for all Vehicles listed on Schedules AB-1 and AB-2. In the event that any Vehicle is returned to Lessor with an average per wheel brake lining thickness of less than that specified, Lessee agrees to pay Lessor the proportionate deficiency times $20.00 representing the charge per wheel per each 1/8 inch of deficiency times the total number of wheels returned.
>
>Upon the return of all Vehicles to Lessor's location Lessee agrees to reimburse Lessor for the total amount of all repairs and replacements exceeding two hundred fifty dollars ($250.00) per vehicle calculated in the aggregate for all Vehicles listed on [the appropriate Schedule].

[Record Document 109, Ex. A-3 (Addendum A/T)].

Addendum A/T expressly states that the terms and conditions set forth therein replace Sections 4, 5(A), 5(B) and 11 of the VLA. At the time Addendum A/T was

executed, the terms and conditions of Sections 4, 5(A) and 5(B) were contained in Addendum M/N. Consequently, the Court finds the plain language of the document evidences the parties intent for Addendum A/T to replace Addendum M/N.[5]

Contrary to TIP's contention, the terms of Addendum A/T and Addendum M/N are not complementary. Both documents contained substantially identical provisions concerning the Lessee's (Tango's) requirements to keep the trailer in good repair and operating condition, replace broken or badly worn parts, perform pre-trip inspections, and to return the trailers with tires and brakes in good working condition. See Record Document 109, Ex. A-2 (Addendum M/N) and Ex. A-3 (Addendum A/T). Had the parties intended for the addenda to co-exist, there would have been no reason for Addendum A/T to include these general provisions. Furthermore, there are several conflicting provisions that cannot be harmonized. For example, Addendum M/N requires the trailers be returned with <u>each</u> tire having "<u>100%</u> of the tread depth as at delivery," and holds Tango responsible for any deficiencies at a rate of $25.95 per 1/32nd of tread wear deficiency. In contrast, Addendum A/T requires the trailers to be returned "with <u>average</u> per tire tread depth of not less than <u>7/32nds</u> of one inch calculated by the tire type." While these provisions both address tire tread wear, they are mutually exclusive and cannot be harmonized.

---

[5]Addendum A/T expressly declares: "All other terms and conditions remain in full force and effect." Although TIP argues this provision precludes Tango's proposed conclusion that Addendum A/T replaced Addendum M/N, the Court does not believe this provision is of particular significance. Rather, the provision simply reinforces the principle that the original agreement (the VLA) remains in full force and effect. See Melat v. Melat, 411 Pa.Super 647, 656, 602 A.2d 380, 385 (1992) (A modification does not displace a prior valid contract; rather, a modification acts as a substitute for the original contract only to the extent that it alters it. The original agreement remains in full force and effect.)

With respect to brake wear, Addendum M/N simply requires the trailers to be returned "with brakes in good operating condition and having a remaining brake lining depth meeting DOT standards" and does not impose a monetary responsibility on Tango for any deficiencies. Addendum A/T, however, specifies that the brakes shall be returned "having an average per wheel brake lining thickness of not less than 50% of the original brake lining thickness" and requires Tango to pay "the proportionate deficiency times $20.00 representing the charge per wheel per each 1/8 inch of deficiency times the total number of wheels returned." In addition, there are conflicting provisions with respect to Tango's liability for damages to the trailers upon return. Addendum M/N states that any damages to the trailer's condition upon return will be charged "at the Lessor's National Repair Standards." In contrast, Addendum A/T provides that Tango's liability for damages to the trailer's condition upon return is to "reimburse [TIP] for the total amount of all repairs and replacements exceeding two hundred fifty dollars ($250.00) per vehicle calculated in the aggregate." These two provisions are diametrically opposed in their meaning. Addendum M/N requires Tango to pay for deficiencies pursuant to a standard, regardless of the actual amount of repair and replacement costs incurred by TIP, while Addendum A/T only requires Tango to "reimburse" TIP. Thus, even if the plain language of Addendum A/T did not evidence the parties' intent to replace Addendum M/N, the two addenda contain substantially differing provisions that cannot coexist.

Accordingly, the Court finds the terms and conditions set forth in both "Additional Terms Addendum A/T" replaced the terms and conditions set forth in the "Maintenance Addendum M/N - 1" as relates to Sections 4, 5(A) and 5(B) of the VLA.

**B.     Interpretation of Addendum A/T**

Under Pennsylvania law, it is clear that the general principles governing interpretation of a contract apply to leases. Village Beer & Beverage, Inc. v. Vernon D. Cox & Co., Inc., 327 Pa.Super. 99, 108, 475 A.2d 117, 121 (1984). The fundamental rule in interpreting the terms of a written instrument is to ascertain and give effect to the intent of the contracting parties. Murphy v. Duquesne Univ. of the Holy Ghost, 565 Pa. 571, 590-91, 777 A.2d 418, 429 (2001). Courts are to presume that the words of a contract were employed deliberately and with intention, and that the parties understood the meaning of the language employed. Steuart v. McChesney, 489 Pa. 45, 51, 444 A.2d 659, 662 (1982). When a written instrument is clear and unambiguous, its meaning must be determined by its contents alone. "It speaks for itself and a meaning cannot be given to it other than that expressed." East Crossroads Center, Inc. v. Mellon-Stuart Co., 416 Pa. 229, 230-31, 205 A.2d 865, 866 (1965).

When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity. Ins. Adj. Bureau, Inc. v. Allstate Ins. Co., 588 Pa. 470, 481, 905 A.2d 462, 468 (2006). Contractual language is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more that one sense." Murphy, 565 Pa. at 591, 777 A.2d at 429, quoting Hutchinson v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (1986). A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper interpretation. Samuel Rappaport Family Partnership v. Meridian Bank, 441 Pa.Super. 194, 204, 657 A.2d 17, 21 (1995). In the

absence of an ambiguity, the plain meaning of the agreement will be enforced. Murphy, 565 Pa. at 430, 777 A.2d at 591. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous contracts must be interpreted by the finder-of-fact. Comm. Coll. of Beaver County v. Comm. Coll. of Beaver County, Soc. of the Faculty (PSEA/NEA), 473 Pa. 576, 592, 375 A.2d 1267, 1275 (1977).

1. "Calculated in the Aggregate"

The last paragraph of Addendum A/T provides: "Upon the return of all Vehicles to Lessor's location Lessee agrees to reimburse Lessor for the total amount of all repairs and replacements exceeding two hundred fifty dollars ($250.00) per vehicle calculated in the aggregate for all Vehicles listed on [the appropriate Schedule]." [Record Document 109, Ex. A-3, A-5 (Addendum A/T)]. The parties disagree as to the meaning of the phrase "in the aggregate." Tango contends this language means Tango is entitled to a deduction of the total (i.e. aggregate) number of all the lease trailers times $250.00 with respect to Tango's obligation to "reimburse" TIP for "repair and replacement costs for damages to the lease trailers." In contrast, TIP contends the phrase "in the aggregate" refers to damages sustained per trailer. If a single trailer does not have at least $250.00 in repairs or replacement costs, then no deduction is made and no amount is owed by Tango. Conversely, if a lease trailer has damages exceeding $250.00 in repairs or replacement costs, Tango owes TIP for all amounts exceeding $250.00.

Because the term "aggregate" is not defined in the VLA, Schedules, or Addenda, it must be construed in accordance with its natural, plain and ordinary meaning.[6] Cordero

---

[6]TIP again argues that its "playbook" is evidence that the parties intended TIP's interpretation to prevail. As previously discussed, however, the parties' intent can be

v. Potomac Ins. Co. of Illinois, 794 A.2d 897, 900, 2002 Pa.Super 60 (2002).  Black's Law Dictionary defines "aggregate" as an "entire number, sum, mass, or quantity of something; complete whole."  See Black's Law Dictionary, 9th ed.  Similarly, the Reader's Digest Great Encyclopedic Dictionary defines "aggregate" as "the entire number, mass, or quantity or anything; amount; total," and expressly defines the phrase "in the aggregate" to mean "collectively; as a whole."  See Record Document 109, Ex. B.  Thus, it appears the plain and ordinary meaning of the phrase "in the aggregate" means to take the total number of lease trailers described in the applicable schedules and multiply that number by $250.00. In other words, Tango is entitled to a deduction of the total of all trailers listed on Schedules AB-1, AB-2, and AB-1-I8J9M (384 trailers) times $250.00, or a deduction of $96,000.00,[7] for repair and replacement costs.  The Court's interpretation of this language gives the phrase "in the aggregate" its ordinary meaning and gives effect to all provisions in the contract as required by applicable law.  See W. United Life Assur. Co. v. Hayden, 64 F.3d 833, 837 (3rd Cir. 1995) (noting that a court must give effect to all provisions in the contract).

TIP asserts this interpretation is unreasonable and effects an absurdity.  See Record Document 119, p.16.  First, TIP claims it would never provide a blanket discount of $96,000.00 to offset damages to well-used trailers.  Second, had the parties intended a fixed amount of credit ($250.00 times 384 trailers), they would have effectuated such

---

ascertained from the four corners of the document and the "playbook" is therefore inadmissible extrinsic evidence.  See, infra at n.1.

[7]More specifically, Tango is entitled to a deduction of $31,250.00 for the first group of 125 trailers listed on Schedules AB-1 and AB-2, and $64,750.00 for the second group of 259 trailers listed on Schedule AB-1-I8J9M.

intent by reducing the purchase price by the predetermined about of $96,000.00. TIP also claims this interpretation would require TIP to issue a check to Tango if there was less than $96,000.00 in damages to TIP's trailers.

In rejecting these arguments, the Court notes that TIP acknowledges these terms "reflect the parties' mutual understanding that the trailers TIP purchased from Tango were well-used units, and hence TIP agreed to forgive up to $250.00 in structural damage to a subject trailer." Id. at p.15. Construing the terms of "Additional Terms Addendum A/T" in light of the entire sale-leaseback transaction provides additional support for this Court's conclusion that the terms are neither unreasonable nor absurd. Even if the Court were to agree that the terms of the contract were unreasonable and do not make "business sense," as TIP contends:

> The court may not rewrite the contract for the purpose of accomplishing that which, in its opinion may appear proper, or, on general principles of abstract justice . . . make for [the parties] a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance. . . .

Steuart v. McChesney, 498 Pa. 45, 51, 444 A.2d 659, 662 (1982), quoting 17A C.J.S. Contracts § 296(4).

Furthermore, the language of Addendum A/T neither suggests nor supports TIP's contention that it would have to pay Tango if the "repairs and replacements" do not exceed $96,000.000. Rather, based on the plain language of Addendum A/T, Tango simply would not owe TIP any monies for "repairs and replacements" exceeding $96,000.00 (i.e., exceeding $31,250.00 for the first group of 125 trailers or $64,750.00 for the second group of 259 trailers).

### 2. Tango's Obligation to "Reimburse" TIP for "Repairs and Replacements"

In the Complaint, Tango claims TIP invoiced Tango for "repairs and replacements" on trailers irrespective of whether TIP actually performed any repairs or replacements on the lease trailers at issue. See Record Document 109, pp. 19-24. Tango seeks partial summary judgment in its favor holding that Tango's responsibility for payment to TIP for the return condition of the lease trailers is for the amount of costs *actually incurred* by TIP for all "repairs and replacements" (less the $250.00 deduction calculated in the aggregate for all Vehicles listed on Schedules AB-1, AB-2, AB-1-I8J9M). In opposition, TIP argues the parties' agreement "unequivocally provides that 'Vehicles will be subject to Lessor's Turn In Conditions and Repair Standards. Any deficiencies will be charged to Lessee at the Lessor's National Repair Standards.'" [Record Document 119, pp.19, citing Addendum M/N].

TIP's argument must fail as the Court has already determined the terms and conditions set forth in "Additional Terms Addendum A/T" replaced the terms and conditions in "Maintenance Addendum M/N -1." At the time the parties executed Addendum A/T, the provision in Addendum M/N which TIP relies upon was essentially "deleted" from the lease agreement. Although TIP continues to argue that Addendum M/N and Addendum A/T "coexist," the Court will not entertain this argument and allow TIP to cherry-pick the terms and conditions which are most favorable to it.

Accordingly, the Court finds the language employed in Addendum A/T is clear and unambiguous. "Reimburse" is commonly understood to mean "to pay back an equivalent for what has been expended." See Record Document 109, Ex. C. Thus, it appears the

plain meaning of the word "reimburse" means Tango is only required to pay back the amount of costs *actually incurred* by TIP for repairs and replacements of the lease trailers. Any other interpretation would ignore the plain meaning of the language employed by the parties and render this provision null. See Capek v. Devito, 564 Pa. 267, 274, 767 A.2d 1047, 1050 (2001) ("An interpretation will not be given to one part of the contract which will annul another part of it.").

## CONCLUSION

Accordingly, the Motion for Partial Summary Judgment [Record Document 109] filed on behalf of Tango Transport, Inc. is **GRANTED.** After interpreting the parties' Vehicle Lease Agreement, Schedules, and Addenda, the Court finds that:

1. With respect to the first group of 125 lease trailers, the terms and conditions contained in the "Additional Terms Addendum A/T" executed by Tango on February 11, 2004 replaced the terms and conditions set forth in "Maintenance Addendum M/N-1";

2. With respect to the second group of 259 lease trailers, the terms and conditions contained in the "Additional Terms Addendum A/T" executed by Tango on July 22, 2004 replaced the terms and conditions set forth in "Maintenance Addendum M/N-1";

3. The plain language in the "Additional Terms Addendum A/T" stating Tango "agrees to reimburse [TIP] for the total of all repairs and replacements exceeding $250 per trailer calculated in the aggregate for all Vehicles listed on [the appropriate Schedule]" means:

    a. Tango is entitled to a deduction of the total (i.e. aggregate) of all 125 trailers times $250 (or $31,250.00) for repair and replacement costs for the first group of 125 trailers;

    b. Tango is entitled to a deduction of the total (i.e. aggregate) of all 259 trailers times $250 (or $64,750.00) for repair and replacement costs for the second group of 259 trailers; and

      c.      Tango's responsibility for payment to TIP for the return condition of all Vehicles listed on Schedules AB-1, AB-2, and AB-1-I8J9M is for the total amount of costs actually incurred by TIP for repairs and replacements (less the appropriate deduction).

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 9th day of November, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE