**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

TANGO TRANSPORT, L.L.C.                    CIVIL ACTION NO. 08-559

VERSUS                                     JUDGE S. MAURICE HICKS, JR.

TRANSPORT INTERNATIONAL                    MAGISTRATE JUDGE HORNSBY
POOL, L.L.C.

## <u>MEMORANDUM ORDER</u>

Before this Court is a Motion for Partial Summary Judgment [Record Document 110], filed on behalf of the Defendant and Counter-Plaintiff, Transport International Pool, L.L.C. ("TIP"). TIP requests the Court enter an order of partial summary judgment against Tango providing that Tango is required to pay, at the lease rate, for the trailers it held beyond the lease termination dates up and until the trailers were returned to TIP. Tango Transport, Inc. ("Tango") opposes this motion. For the reasons stated herein, the Motion for Partial Summary Judgment is **DENIED.**

### FACTUAL BACKGROUND

In January of 2004, Tango Transport, Inc. ("Tango") and Transport International Pool, Inc. ("TIP") entered into a sale-leaseback agreement whereby TIP purchased 125 dry van trailers from Tango for One Million Two Hundred Ninety-Five Thousand Dollars ($1,295,000.00) and then leased the trailers back to Tango. <u>See</u> Record Document 109, Ex. A-4. Concerning the lease portion of the agreement, the parties entered into Vehicle Lease Agreement No.1-BN1E6 ("VLA"), along with Schedule AB-1 and Schedule AB-2, for the lease of the trailers to Tango for continued use in Tango's business for a period of thirty-six (36) months. <u>See</u> Record Document 110, Ex. A  (VLA and Schedules AB-1 and

AB-2).  At that time, the parties also executed a maintenance addendum, "Maintenance Addendum M/N-1," which is specifically referenced in the VLA and purports to replace Sections 4, 5(A) and 5(B) of the VLA.  See Record Document 110, Ex. A (Addendum M/N). Thereafter, the parties executed "Additional Terms Addendum A/T," which also purports to replace Sections 4, 5(A) and (B), as well as Section 11 of the VLA.  See Record Document 110, Ex. A (Addendum A/T).

In July of 2004, Tango and TIP entered into a second sale-leaseback agreement whereby TIP purchased an additional 259 trailers from Tango for a purchase price of Three Million One Hundred Eight Thousand Dollars ($3,108,000.00) and then leased those trailers back to Tango for use in Tango's business operations.  The parties executed Schedule AB-1-I8J9M, which was made a part of the VLA.  Additionally, the parties executed another "Additional Terms Addendum A/T" purporting to replace Sections 4, 5(A) and 5(B), and 11 of the VLA.  See Record Document 110, Ex. A (Schedule AB-1-I8J9M).

Around May of 2006, Tango leased an additional 81 trailers from TIP.  These trailers were listed on Schedule AB-1-18S7S4, and the schedule was made a part of the VLA. See Record Document 110, Ex. B.  The trailers set forth in Schedule AB-1-18S7S4 are referred to the by the parties as the "TRAC Lease Trailers."

The VLA provides that Tango's "obligations under this Agreement shall not cease until each Vehicle has been returned to lessor or paid for as provided herein. . . ."  [Record Document 110, Ex. A (VLA § 22)].  Because the term of the lease agreement was for 36 months, Tango was required to return the first group of 125 trailers to TIP by February 28, 2007 and return the second group of 259 trailers to TIP by July 31, 2007. See Record

Document 110, p. 1.  It is undisputed that the trailers were not fully returned to TIP until mid-January 2008.  See Record Document 110, Ex. C.

Upon Tango's return of the lease trailers to TIP, TIP made a claim upon Tango for various lease charges and damages in the amount of $526,113.47, together with late fees. See Record Document 1 (Complaint ¶ 6).  Tango disagreed with TIP's interpretation of the terms and conditions of the VLA, including the various addendums/additions thereto, and filed the present action against TIP "seeking a declaration with respect to parties rights, liabilities and obligations as relates to the terms and conditions of the parties' agreements with respect to [TIP's] claim for various lease charges, damages and late fees under the terms of said agreements."  Id. at ¶ 10.  In addition, Tango is seeking "to recover reasonable storage charges for storage of the leased vehicles when [TIP] failed to take possession of the leased vehicles in a timely and reasonable manner."  Id. at ¶ 8.

In response, TIP filed a counterclaim against Tango asserting Tango breached the lease agreement by failing to timely return the lease trailers and tender payment in full, seeking damages in the amount of Six Hundred Eighty-Six Thousand Five Hundred Seventy and 74/100 Dollars ($686,570.74), plus additional late fees, all future lease payments, charges, expenses and fees as set out in the lease agreements.  TIP also filed a claim against Gorman Group, Inc. and B.J Gorman for breach of guaranty.[1]  See Record Document 62 (Third Amended Complaint).

TIP now moves for an order of partial summary judgment against Tango providing that Tango is required to pay, at the lease rate, for the trailers it held beyond the lease

---

[1]TIP's claims for breach of guaranty are not at issue in this motion for partial summary judgment.

termination dates up and until the trailers were returned to TIP.  Further, TIP seeks an order stating that if Tango is found to have been in breach of the lease Agreement, Tango properly and lawfully was in breach of all agreements with TIP, including with respect to the TRAC Lease Trailers.  See Record Document 110.  Tango opposes this motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id., 477 U.S. at 322, 106 S. Ct. at 2552.  If the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the motion is properly made, however, Rule 56(c) requires the nonmovant to go "beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.  Little, 37 F.3d at 1075;

<u>Wallace</u>, 80 F.3d at 1047.  All factual controversies must be resolved in favor of the nonmovant.  <u>Cooper Tire & Rubber Co. v. Farese</u>, 423 F.3d 446, 456 (5th Cir. 2005).

## LAW AND ANALYSIS

**A.      Pennsylvania Law**

To establish a claim for breach of contract under Pennsylvania law,[2] the plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of duty imposed by the contract; and (3) resultant damage.  <u>Nesselrotte v. Allegheny Energy, Inc.</u>, 615 F.Supp.2d 397, 407 (W.D.Pa. 2009); <u>Church v. Tentarelli</u>, 953 A.2d 804, 808 (Pa.Super. 2008).

The fundamental rule in interpreting the terms of a written instrument is to ascertain and give effect to the intent of the contracting parties.  <u>Murphy v. Duquesne Univ. of the Holy Ghost</u>, 565 Pa. 571, 590-91, 777 A.2d 418, 429 (2001).  Courts are to presume that the words of a contract were employed deliberately and with intention, and that the parties understood the meaning of the language employed.  <u>Steuart v. McChesney</u>, 489 Pa. 45, 51, 444 A.2d 659, 662 (1982).  When a written instrument  is clear and unambiguous, its meaning must be determined by its contents alone.  "It speaks for itself and a meaning cannot be given to it other than that expressed."  <u>East Crossroads Ctr., Inc. v. Mellon-Stuart Co.</u>, 416 Pa. 229, 230-31, 205 A.2d 865, 866 (1965).

When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity.  <u>Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.</u>, 588 Pa.

---

[2]Section 34 of the VLA states, in pertinent part: "This Agreement and the parties' rights and obligations hereunder shall be governed by the laws of the Commonwealth of Pennsylvania."

470, 481, 905 A.2d 462, 468 (2006). Contractual language is ambiguous only "if it is reasonably susceptible of different constructions and capable of being understood in more that one sense." Murphy, 565 Pa. at 591, 777 A.2d at 429, quoting Hutchinson v. Sunbeam Coal Co., 513 Pa. 192, 519 A.2d 385, 390 (1986). A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper interpretation. Samuel Rappaport Family P'ship v. Meridian Bank, 441 Pa.Super. 194, 204, 657 A.2d 17, 21 (1995).

Ambiguities within a contract may be patent or latent. A "patent" ambiguity "appears on the face of the instrument, and arises from the defective, obscure, or insensible language used." Steuart, 489 Pa. at 53, 444 A.2d at 663 (quoting Black's Law Dictionary 105 (rev. 4th ed. 1968)). In contrast, a "latent" ambiguity "arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." Id. (citing Easton v. Washington County Ins. Co., 391 Pa. 28, 137 A.2d 332 (1957). In the absence of an ambiguity, whether patent or latent, the plain meaning of the agreement will be enforced. Murphy, 565 Pa. at 430, 777 A.2d at 591.

**B.    Vehicle Lease Agreement No.1-BN1E6 ("VLA")**

In support of its motion for partial summary judgment, TIP points to the following provisions of the VLA:

> 22.   LESSEE'S PAYMENT OBLIGATION. Upon the termination of this Agreement for any reason whatsoever, including normal expiration, Lessee's payment obligations under this Agreement shall not cease until each Vehicle has been returned to Lessor or paid for as provided herein and all payments and charges due hereunder have been paid in full. . . .

6 of 9

* * * * *

27.   RENEWAL.  In the event that Lessee shall, without further written agreement, continue to hold any Vehicle upon the expiration of its Lease Term, Lessor at its option may: (a) renew this Agreement for a term and at lease rates specified in writing by Lessor upon ten (10) days prior notice; or (b) demand the immediate return of each Vehicle to the Return Location.  In the event that Lessor does not elect either (a) or (b) above, any period during which Lessee continues to hold any Vehicle shall be billed at the lease rates, subject to change at any time by Lessor with advance notice to Lessee, and under the terms and conditions set forth herein.

[Record Document 110, Ex. A (VLA §§ 22, 27)].

TIP claims these provisions unmistakably state that Tango was obligated to return the trailers by a date certain, and if, for whatever reason, it did not do so, Tango was required to continue to pay lease payments to TIP.  See Record Document 110, pp. 7-8.

Additionally, Section 16 of the VLA provides, in pertinent part: "If Lessee is in default of this Agreement or any other agreement with Lessor, Lessee shall be declared in default of all existing agreements between Lessee and Lessor.  No termination, repossession or other act by Lessor after default by Lessee shall relieve Lessee from any of its obligations hereunder."  [Record Document 110, Ex. A (VLA § 16)].  Based on this language, TIP asserts that it was within TIP's legal rights to declare Tango in default of the TRAC Lease Agreement and pursue repossession of the TRAC Lease Trailers.

The Court agrees the language set forth above is clear and unequivocal, but effect must be given to all provisions of a contract.  See Com., Dept. of Transp. v. Manor Mines, Inc., 523 Pa. 112, 119, 565 A.2d 428, 432 (Pa. 1989).  TIP's motion for partial summary judgment conveniently ignores Section 21 of the VLA, which states, in pertinent part:

21.   VEHICLE RETURN.   Lessee shall return each Vehicle to Lessor in good condition, normal wear and tear excepted, with tires and brakes in accordance with Section 4 hereof or any maintenance addendum executed

in connection herewith, and all Lessee identification, logos and decals, together with any residue therefrom, removed to Lessor's satisfaction. *Upon termination of this Agreement in any manner permitted hereunder, or upon return of any Vehicle, <u>Lessee shall deliver said Vehicle to Lessor at the <b>Return Location</b> set forth on Schedule AB.</u>* In the event lessee returns any Vehicle to any other location, Lessee shall pay all costs incurred by Lessor in returning said vehicle to Return Location. . . .

[Record Document 110, Ex. A (VLA § 21) (emphasis added)].

Schedules AB-1 and AB-2 identify the "Return Location" as "8121 Distribution Drive, Little Rock, AR, 72209" (TIP's Little Rock Distribution Center), and Schedule AB -1-I8J9M identifies the "Return Location" as "101 Corporate Dr., Sibley, La" (Tango's yard).  <u>See</u> Record Document 110, Ex. A (Schedules AB-1, AB-2, and AB -1-I8J9M ).  In November of 2006, Tango learned that TIP was no longer operating a distribution center in Little Rock, Arkansas and that it would be impossible to return the first group of 125 lease trailers to TIP at the agreed upon "Return Location."  <u>See</u> Record Document 118, Ex. B (Declaration of W. Daniel Stipp, ¶ 4).  As a result, Tango avers that a new agreement was made specifically dealing with how the lease trailers were agreed to be returned, the location where the parties' agreed those lease trailers would be returned as well as the timing of the return of those lease trailers.  <u>See</u> Record Document 118, pp.9-10 and Ex. B (Declaration of W. Daniel Stipp, ¶¶ 6-11 and attached emails).

In response to Tango's position, TIP again fails to address the "Return Location" issue and merely asserts that the emails proffered by Tango do not create a new agreement between the parties.  <u>See</u> Record Document 124.  Regardless of whether the emails proferred by Tango created a new agreement between the parties, the Court finds that, as a result of the closure of TIP's distribution center in Little Rock, there is a genuine

issue of material fact as to whether Tango breached the VLA by failing to return the lease trailers to TIP at the termination of the lease period.

Under Pennsylvania law, performance of a contract is excused when it is prevented by the acts of the other party or is rendered impossible by him.  Philadelphia Television Network, Inc. v.. Reading Broadcasting, Inc., 2005 WL 1668346, *23 (Pa.Com.Pl. 2005). It is undisputed that Tango's obligation to return the lease trailers to TIP at its distribution center in Little Rock, Arkansas was impossible at the time the lease agreement terminated with respect to the first group of 125 trailers listed on Schedules AB-1 and AB-2.  Thus, the Court finds the parties would have necessarily entered into some sort of subsequent agreement concerning the return location of those lease trailers.  The terms of such agreement are beyond the scope of this motion for partial summary judgment.

## CONCLUSION

The Court finds there remain genuine issues of material fact precluding partial summary judgment in favor of TIP.  Accordingly, TIP's Motion for Partial Summary Judgment [Record Document 110] is **DENIED.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 9th day of November, 2009.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE