# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| TANGO TRANSPORT, L.L.C. | * | CIVIL ACTION NO. 08-0559 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| TRANSPORT INTERNATIONAL POOL, INC. | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

On December 22, 2010, the District Court awarded Plaintiff, Tango Transport, L.L.C. ("Tango") attorneys' fees that it "reasonably and necessarily incurred" as a result of defendant Transport International Pool, L.L.C. ("TIP")'s wrongful sequestration of 81 TRAC Lease Trailers. Dec. 22, 2010, Ruling and Judgment [Doc. Nos. 221 & 222]. District Judge S. Maurice Hicks, Jr. further referred the matter to the undersigned magistrate judge for determination. *Id.* In connection therewith, Tango filed a Claim for Attorneys' Fees and Memorandum in Support thereof [doc. # 231], as well as the supporting affidavits of H.N. Cunningham III [doc. # 236] and Robert Kennedy, Jr. [doc. # 236-3] (both filed under seal). In addition to filing a response to plaintiff's claim [doc. # 242], defendant TIP filed a Motion for Deferral of Consideration of Attorneys' Fees [doc. # 240], which plaintiff Tango opposes [doc. # 242].

For reasons assigned below, it is recommended that TIP's Motion for Deferral of Consideration of Attorneys' Fees [doc. # 240] be **DENIED**. It is further recommended that Tango's Claim for Attorney's fees [doc. nos. 231] be **GRANTED**, and that Tango be awarded attorneys' fees totaling **$158,776.85**.

**BACKGROUND**

Plaintiff Tango filed the underlying action in April 2008 pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.  *See* Doc. # 1.  The dispute between Tango and TIP revolves around sale and lease-back agreements executed by Tango and TIP.  Pursuant to the agreements, TIP would purchase a group of trailers from Tango, and subsequently lease those trailers back to Tango for use in Tango's business operations as a motor carrier.  Mem. Ruling, Dec. 22, 2010 [Doc. # 221], Stipulations, ¶¶ 6 & 14.  The first group of trailers subject to the Agreement consisted of 125 trailers, pursuant to various agreements dated January, February and March, 2004.  Doc. # 231-1, pp. 2-3.  In February 2004, the Gorman Group, Inc. executed a Guaranty agreement in favor of TIP relating to the Lease Agreement.  *Id.*

 The second group of trailers consisted of 259 trailers, pursuant to a new Schedule AB-1-19J9M, as well as a July 2004 Addendum A/T.  *Id.*  These subsequent agreements became part of the Lease Agreement.  *Id.*  Tango subsequently leased an additional 81 trailers from TIP, accomplished by the execution of a new Schedule AB-1-18S7S4, which was also made part of the Lease Agreement.  *Id.*

The dispute between Tango and TIP arose when the time came for Tango to return the trailers to TIP.  After much discussion over where to return the trailers, *see* doc. # 221, Findings of Fact, ¶¶ 3, 6, 8, 12, 26, in March and April 2007, Tango informed TIP that it had trailers ready for pick-up at Tango's Sibley, Louisiana location.  *Id.* at ¶¶ 24, 25, 29.  Rather than retrieve the trailers at Tango's Sibley location, TIP had a new buyer come to the location to "'cherry-pick' trailers (i.e. choose trailers that were already in retail condition) and essentially used Tango's Sibley location as a sales lot or storage lot."  *Id.* at ¶ 30.  After Tango moved some of the trailers

2

to its West Memphis, Arkansas location, Tango advised TIP again that the trailers were ready to be picked up, and that the failure to pick up the trailers was affecting Tango's "ability to bring in more trailers." *Id.* at ¶¶ 35-36.  TIP billed Tango for delay rentals until the lease trailers arrived at a TIP facility, which began to occur in September and October 2007, and January 2008.  *Id.* at ¶¶ 55-56.

Tango filed the above-captioned action on May 14, 2008, seeking a declaratory judgment to the effect that Tango is not liable under the agreement for the lease charges, damages, and late fees sought by TIP.  *See* Original Complaint, Doc. # 1.  Thereafter, TIP sought sequestration of the remaining TRAC Lease Trailers.  Doc. # 221, ¶ 61.  "TIP's stated purpose for obtaining the sequestration was that Tango was in default and material breach of the parties' contract because Tango owed TIP the sum of $526,113.47 in lease charges and damages, together with $38,946.77 in late fees." *Id.*

Subsequently, Magistrate Judge Mark Hornsby ordered the United States Marshal's Service to seize and sequester the 81 TRAC Lease Trailers remaining on Tango's yards.  Doc. # 5.  After the sequestration of the 81 TRAC Lease Trailers, Tango filed an amended complaint against TIP with a new cause of action for the wrongful sequestration of the 81 TRAC Lease Trailers, which were not due to be returned to TIP until 2009.  Doc. # 27.

Following a bench trial lasting six days, Judge Maurice Hicks rendered a Memorandum Ruling on December 22, 2010.  Doc. # 221.  Judge Hicks ruled, *inter alia*, that "TIP's actions in obtaining a writ of sequestration from the Court and causing the U.S. Marshal to sequester the 81 lease trailers effectively breached TIP's fundamental obligation under the TRAC lease." *Id.*, § E, ¶ 6.  Judge Hicks continued that TIP "had no justifiable basis" to expect that Tango would fail in

3

its obligations to make lease payments.  *Id.* at ¶ 8.  Judge Hicks further noted the lack of evidence

with regard to TIP's claim that it would not have received adequate compensation from Tango in

connection with the underlying suit.  *Id.* at ¶ 9.  Finally, because the Court found that "the

sequestration was mere pretext for exercising economic leverage over Tango," TIP's

sequestration of the 81 TRAC Lease Trailers was "wrongful."  *Id.* at ¶¶ 10-11.

As a result, Judge Hicks held that Tango would be awarded attorneys' fees that it

"reasonably and necessarily incurred" due to TIP's wrongful sequestration of 81 TRAC Lease

Trailers.  *Id.*  Specifically, the Court ruled:

3.      A court may allow damages, including attorneys' fees, for the wrongful
        issuance of a writ of sequestration on a motion to dissolve or on a
        reconventional demand.

        ***

11.     Therefore, TIP's sequestration of the 81 TRAC Lease Trailers was
        "wrongful" and Tango is entitled to recover reasonable and necessary
        attorneys' fees incurred in connection with the dissolution of the writ.  La.
        Code of Civ. P. Art. 3506.

        ***

12.     The amount of attorneys' fees Tango has incurred in seeking the
        dissolution of the writ of sequestration is a matter that will be referred to
        the Magistrate Judge for determination pursuant to Fed. R. Civ. P. 54(d).

        ***

        IT IS FURTHER ORDERED that Tango be and is hereby entitled to recover attorneys'
        fees incurred as a result of TIP's wrongful sequestration of the 81 TRAC Lease Trailers.
        **This matter is referred to the Magistrate Judge for determination of the amount of
        attorneys' fees reasonably and necessarily incurred by Tango**.

Doc. # 221, Mem. Ruling, pp. 24-26 (emphasis added).

The issues are briefed; the matter is now before the Court.

## LAW AND ANALYSIS

**I.      TIP's Request to Defer Consideration of Attorneys' Fees**

At the outset, the undersigned must consider TIP's motion to defer the consideration of attorneys' fees.  Doc. # 240.  TIP argues that judicial economy considerations warrant a deferral of the determination of the attorneys' fees award until the completion of all post-trial motions and appeals.  Doc. # 240-1, p. 3.  TIP further claims that disposition of the attorneys' fees award at this time would be a "waste of judicial resources as well as a waste of time and money by the parties and their counsel."  *Id.*

In support of its argument for deferral, TIP reiterates the arguments it makes in its opposition to Tango's claim for attorneys' fees, discussed *infra*.  *See* doc. # 241.  TIP contends that Tango's entitlement to fees and costs is subject to change because it is "likely" that the verdict issued December 22, 2010 will be overturned.  Doc. # 240-1.  However, Judge Hicks has already ruled that Tango is entitled to reasonable and necessary attorney's fees.  Doc. # 221, pp. 24-26. The only issue before the court is the amount of such fees, and the matter has been fully briefed.  Accordingly, Tango's claim for attorneys' fees is ripe for consideration and a delay is not warranted simply because TIP hopes that the judgment will be reversed on appeal.

**II.      Tango's Claim for Attorneys' Fees Pursuant to Fed.R.Civ.P. 54(d)**

In diversity cases, state law governs the award and reasonableness of attorneys' fees. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  The fee award is governed by the same law that provided the rule of decision for the substantive issues in the case.  *Id.* (citation omitted).  As noted by Judge Hicks in his Memorandum Ruling,

> [p]ursuant to the terms of the VLA, Pennsylvania law governed the contractual rights and obligations of the parties.  Because the terms of the VLA pertaining to the return of the lease trailers were abrogated and the other provisions of the VLA had been fulfilled, the choice-of-law provision no longer applies and the parties may pursue equitable remedies under Louisiana law.  *See* La. C.C. art. 3515;

> *Dorsey v. Northern Life Ins. Co.*, 2005 WL 2036738, at *6 (E.D. La. 2005) (where choice-of-law provision provided that the terms of the Agreement were "governed by the laws of the State of Louisiana," district court held that Washington law applied to contract claims and Louisiana law applied to tort and statutory claims arising out of the contractual relationship).

Mem. Ruling, Dec. 22, 2010 [Doc. # 221 n6].

Therefore, the issue of attorneys' fees is governed by Louisiana law.

Under Louisiana law, the general rule is that attorneys' fees are not recoverable, except when explicitly authorized by statute or contract. *Killebrew v. Abbott Laboratories*, 61,338 (La. 6/19/78) 359 So.2d 1275, 1278. Here, as aptly described by Judge Hicks in his Memorandum Ruling, La. C.C.P. art. 3506 provides that Tango may recover attorneys' fees stemming from its wrongful sequestration claim.

## A. TIP's Argument Against Tango's Recovery of Attorneys' Fees

Rather than contesting the specifics of attorneys' fees claimed in the instant motion, the focus of TIP's response is on whether Tango is entitled to attorneys' fees <u>at all</u>.[1] *See* doc. # 241. As described *supra*, Judge Hicks has already ruled on this issue in his Memorandum Ruling, wherein he found that Tango is indeed entitled to reasonable attorneys' fees stemming from TIP's writ of sequestration. Specifically, Judge Hicks found that TIP's sequestration was wrongful for the following reasons: Tango was entitled to remain in possession of the 81 TRAC Lease Trailers for an additional period of time under the TRAC lease; Tango had returned the remaining 384 trailers to TIP, and Tango continued to make timely lease payments on the

---

[1] For example, TIP argues that Tango is not entitled to attorneys' fees for TIP's wrongful sequestration "because Tango never obtained dissolution of the writ." Doc. # 241, p. 3. Because Tango did not seek resolution, TIP continues that, Tango "clearly did not incur fees which it may now recover."

It is true that Section 3506 provides for the recovery of attorneys' fees in connection with the dissolution of a wrongful writ of sequestration. La. Code of Civ. P. Art. 3506. However, TIP ignores the portion of the statute concerning the recovery of attorneys' fees stemming from <u>reconventional demand</u> (*i.e.*, a counter-claim).

Here, Tango did not include a claim for wrongful sequestration in its original complaint, as TIP did not obtain the writ until after Tango filed suit. *See* Compl., Apr. 4, 2008 [Doc. # 1]; Writ of Sequestration, May 14, 2008 [Doc. # 7]. Thereafter, Tango asserted claims for wrongful sequestration in its first and second amended complaints. Am. Compl., June 4, 2008 [Doc. # 27, ¶¶ 11-12]; Second Am. Compl., Mar. 17, 2009 [Doc. # 56, ¶¶ 14-15].

remaining 81 trailers; "TIP had no justifiable factual basis to reasonably expect that it had been, or would be, deprived of any part of Tango's obligation to pay lease payments" on the trailers; and "[t]here was no evidence that TIP reasonably believed that it could not have received adequate compensation from Tango for its claims in connection with this lawsuit."  Doc. # 231-1, p. 10 (citing Mem. Ruling, § E, ¶¶ 6-9.).

In short, the substantive issues raised by TIP concerning whether Tango is allowed to obtain attorney's fees are beyond the scope of the mandate from Judge Hicks, and are therefore not to be considered by the undersigned in this proceeding.  *Baza v. Chevron Oil Serv. Co.*, 95-1574, 1996 WL 711506, *2 (E.D. La. 12/10/1996).[2]

### B.    Calculation of Attorney's Fees in the Instant Motion

When considering a claim for attorneys' fees in Louisiana,

> the court shall allow the introduction of all admissible evidence...including real and documentary evidence and testimony, and shall allow oral and written argument in support thereof, and such evidence, testimony and argument shall be considered by the court in rendering judgment on the demand.

La. R.S. 13:3738.

The evidence used to substantiate a claim of damages must be clear, definite, and "not subject to conjecture." *Holliman v. E.H. Griffis*, 14, 859 (La.App. 2d Cir. 6/17/82) 415 So.2d 306, 308 (citing *Bice v. Southside Motors, Inc.*, 344 So.2d 78 (La.App. 2d Cir. 1977); *Talley v. Bradley*, 177 So.2d 624 (La.App. 3d Cir. 1965); *Ralph's Fleet, Inc. v. American Marine Corporation*, 157 So.2d 317 (La.App. 4th Cir. 1963)).

The determination of what is considered "reasonable" attorneys' fees largely depend on

---

[2] To refresh TIP's memory, under Louisiana law, attorneys' fees in an action for wrongful seizure are proper and should be awarded according to La. C.C.P. art. 3506.  *Oubre v. Hinchman*, 9510 (La.App. 4th Cir. 11/08/1978) 365 So.2d 17, 20 (citing *Bice v. Southside Motors, Inc.*, 13,160 (La.App. 2d Cir. 1977) 344 So.2d 78, 82.  The award, however, must be limited to that part of the fee dealing with the reconventional demand and must exclude that part dealing with the defense in the original suit.  *Id.* (citing *Baham v. Sutherland*, 2550 (La.App. 4th Cir., 4/03/1967) 197 So.2d 345, 349; *see also Burton v. Jardell*, 22-991-CA (La. App. 2d Cir. 10/30/1991) 589 So.2d 610, 614-15 ("attorney fees for services rendered in connection with attacking the writ may be included as an extra element of damages"); *Bell v. Chase*, 84-CA-582 (La.App. 5th Cir. 1985) 468 So.2d 744.

the circumstances of each individual case, and the Court has broad discretion in determining the award of attorneys' fees. *Montalvo v. Montalvo*, 91-CA-611 (La.App. 5 Cir. 12/30/91) 592 So.2d 904, 907 (citing *D'Angelo v. Poche*, 434 So.2d 120 (La.App. 5th Cir.1983); *writ den.* 435 So.2d 444 (La.1983); *Blue v. Schoen*, 556 So.2d 1364 (La.App. 5th Cir.1990) *modified* 559 So.2d 1347 (La.1990)). The trial court's exercise of discretion will not be interfered with except in cases of "clear abuse." *Id.*

In Louisiana, the Rules of Professional Conduct "have the force and effect of substantive law." *Gulf Wide Towing, Inc. v. F.E. Wright (U.K.) Ltd.* 554 So.2d 1347, 1354 -1355 (La.App. 1 Cir.,1989) (citing *City of Baton Rouge v. Stauffer Chemical Company*, 500 So.2d 397 (La.1987)). As such, the factors listed in Rule 1.5(a) are to be considered by the Court in making a determination of attorney's fees.[3] *State, Dept. of Transp. and Development v. Williamson*, 597 So.2d 439, 441-42 (La. 1992) (citations omitted).

Here, Tango has submitted billing records and affidavits in support of its claim for attorneys' fees stemming from its wrongful sequestration claim against TIP. The undersigned has thoroughly reviewed the records and all supporting documentation. As Tango has divided its claims for attorneys fees into various categories, the undersigned will consider each in turn.

### 1.    Rates of Tango's Counsel

In the case *sub judice*, Tango's retained counsel were from the firms of Roberts, Cunningham, & Stripling, L.L.P., (hereinafter "RCS, L.L.P.") and Cook Yancey.

Tango's counsel charged the following rates:

---

[3] The factors to be considered in determining the reasonableness of attorneys' fees include: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment, and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court's own knowledge. *Id.* (citing La. Rule of Prof. Conduct 1.5(a)).

| RCS, L.L.P. | | |
|---|---|---|
| H.N. Cunningham, III | Partner | $250 / hour |
| James C. Baker | Associate | $250 / hour |
| Timothy J. Gargiulo | Associate (former) | $250 / hour |
| Scott A. Dulaney | Associate | $175 / hour |
| John P. Tufnell | Associate | $175 / hour |

With regard to RCS, L.L.P., Tango charged the same hourly rate of $250 for three different attorneys. One of the attorneys, H.N. Cunningham III, is a partner at the firm, while the other two are associates. In the undersigned's experience, the $250 hourly rate is reasonable for a partner such as Attorney Cunningham, but not for an associate. However, associate James C. Baker has extensive experience as an attorney, having been in practice since 1983 and employed at Roberts, Cunningham since 1987. Decl. of H.N. Cunningham III, Jan. 28, 2011, Mot. for Att'y Fees, Ex. "B" (filed under seal) [Doc. # 236, p. 16]. Additionally, Mr. Baker is licensed to practice before numerous United States District Courts in Texas, Wisconsin, Illinois, and Colorado, as well as the United States Court of Appeals for the Fifth, Seventh, and Eighth Circuits. *Id.* Attorney Cunningham's declaration is silent as to the skills and accolades of Timothy J. Gargiulo. Therefore, Mr. Gargiulo's hourly rate will be reduced to $175 - the same rate as the two remaining associates - in the final calculation of attorneys' fees.

| Cook Yancey | | |
|---|---|---|
| Robert Kennedy, Jr. | Partner | $150 / hour |
| Elizabeth M. Carmody | Associate | $135 / hour |
| Megan L. Streetman | Summer Associate | $75 / hour |

In the undersigned's experience, the rates charged by Cook, Yancey are reasonable and appropriate. Compensation for summer associates may be awarded, and "should be determined by the marketplace." *Missouri v. Jenkins*, 491 U.S. 274, 287 (1989). "Delegation of duties to a

summer law clerk may represent an efficient utilization of time and fees for work performed can be awarded, provided that such time was reasonably expended." *Cater v. Fidenity Nat. Ins. Co.*, 07-4619, 2009 WL 35342 *1 (E.D. La. 1/6/09) (citing *Beamon v. City of Ridgeland, Mississippi*, 666 F.Supp. 937, 946 (S.D. Miss. 1987).  Case law in the Eastern District of Louisiana has held that a rate between $55.00 and $65.00 per hour is reasonable for a paralegal, who usually has less experience than a summer associate.  *Id.* at *2; *see also Yousuf v. UHS of De la Ronde, Inc.*, 110 F.Supp.2d 482, 491 (E.D. La. 1999); *Chevron v. U.S.A., Inc. v. Aker Maritime Inc.*, 03-2027, 2008 WL 594650 at *9 (E.D. La. 1/2/08).  Likewise, Louisiana state courts have held that recovery of paralegal fees is reasonable in circumstances where a statute provides for the award of attorneys' fees.  *St. Bernard Police Jury v. Murla*, 99-CA-0377 (La.App. 4th Cir. 1999) 745 So.2d 1264, 1269-70 (*rev'd on other grounds*, 761 So.2d 532).  As Ms. Streetman was a student at the Paul M. Hebert School of Law at the time she worked for Cook Yancey, the undersigned finds that a rate of $75.00 per hour is reasonable.

TIP is silent as to whether it considers Tango's hourly rates to be appropriate.  As TIP does not contest the hourly rates provided by Tango, the undersigned finds that the hourly rates charged by both R.C.S., L.L.P., and Cook Yancey are reasonable (with the exceptions noted *supra*).

### (2)   Tango's Claim for Attorneys' Fees Incurred as Result of TIP's Wrongful Sequestration

Tango has divided its time spent on the wrongful sequestration claim into two classifications: attorneys' fees that are "readily identifiable as being incurred by Tango as a result of TIP's wrongful sequestration," and attorneys' fees that require "further explanation" in order to show how they stem from TIP's wrongful sequestration.

### (i)   Attorneys' Fees Readily Identifiable as Being Incurred by Tango as a Result of TIP's Wrongful Sequestration

10

Under the first classification, RCS, L.L.P. charged the following amounts:[4]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| H.N. Cunningham III | 36.75 hours x $250 / hour | $9,187.50 |
| James C. Baker | 67.25 hours x $250 / hour | $16,812.50 |
| Timothy J. Gargiulo | 11.60 hours x $250 hour | $2,900.00 |
| **TOTAL** | | **$28,900.00** |

However, as stated *supra*, Attorney Gargiulo's hourly rate should be reduced to $175 per hour, making the revised total for his hours worked $2,030.00 (11.60 hours x $175 / hour). Additionally, the undersigned finds that some of the hours billed by Attorney Gargiulo in this matter do not indicate that the work he was doing was specific to Tango's wrongful sequestration claim. For example, on June 19, 2008, Mr. Gargiulo billed .3 hours to review and analyze the "contract and supporting documents," and to "review the file."  Doc. # 236-1 (filed under seal). On June 19, 2008, Mr. Gargiulo billed 2.30 hours again to "work on [the] file," as well as research punitive damages and other damages available in the contract.  The undersigned can surmise that attorneys' fees, recoverable as an element of damages, were a type of fee that Attorney Gargiulo researched in accordance with this billing.  Nevertheless, the undersigned finds it appropriate to deduct 1.30 hours from the total time Attorney Gargiulo billed for this matter, inasmuch as "work on file" is not sufficiently indicative of "work" spent on the wrongful sequestration claim.

Therefore, the revised total under the first classification is as follows:

| RCS, L.L.P. Attorneys (Revised) | | |
|---|---|---|

---

[4] Billable hours falling within this classification are identified with a mark of "Category 1" on the billings of Roberts, Cunningham & Stripling, L.L.P.  *See* Index for Markups and Summary of Hours and Attorneys Fees, Doc. # 236-1.

| H.N. Cunningham III | 36.75 hours x $250 / hour | $9,187.50 |
| James C. Baker | 67.25 hours x $250 / hour | $16,812.50 |
| Timothy J. Gargiulo | 10.30 hours x $175 hour | $1,802.50 |
| **TOTAL** | | **$27,802.50** |

As to Cook Yancey, under the first classification the firm had the following billable hours:[5]

| **Cook Yancey Attorneys** | | |
|---|---|---|
| Robert Kennedy, Jr. | 16.7 hours x $150 / hour | $2,505.00 |
| Elizabeth M. Carmody | 9.2 hours x $135 / hour | $1,242.00 |
| Megan L. Streetman | 2.3 hours x $75 / hour | $172.50 |
| **TOTAL** | | **$3,919.50** |

Therefore, the total for both of the firms retained by Tango under the first classification is **31,722.00** ($27,802.50 + $3,919.50 = $31,319.50).

Concerning the types of activities billed for under this category, RCS, L.L.P.'s attorneys billed for the initial review and analysis of the TIP's counterclaim, as well as TIP's application for a writ of sequestration. Doc. # 236-1 (filed under seal). Additionally, Tango's counsel billed for performing research on Louisiana law (as to how a writ of sequestration could be dissolved) and Pennsylvania law (in order to establish that Tango was not in default, thereby making the writ of sequestration invalid). *Id.* In short, a thorough review of the billing records under the instant classification clearly reveals attorney time spent on matters directly related to the writ of sequestration. *Id.*

Tango bulks the remainder of its fees under the classification "fees incurred as a result of

---

[5] *See* Affidavit of Robert Kennedy, Jr., Doc. # 236-3.  It is clear that the firm of Roberts, Cunningham, & Stripling, L.L.P., prepared the instant claim, and tailored the billings of Cook Yancey to fit the various categories and classifications described herein.  For ease of reference, the Cook Yancey billings that fall in the instant category are identified in categories "1," "2," and "9" on Attorney Kennedy's Affidavit.  *Id.* at p. 10.

TIP's wrongful sequestration which require some further explanation for the Court."  There are numerous subcategories within this classification; the undersigned will consider each in turn.

            (ii)    Fees Incurred in Connection with Early Oral Deposition of Ms. Christiana DiSanto

     As soon as the writ of sequestration was issued, *see* doc. # 7, Tango desired to take the deposition of Ms. DiSanto, corporate representative for TIP.  Ms. DiSanto "verified under oath that Tango was in default of the [Vehicle Lease Agreement, "VLA"] by failing to pay TIP the sum of $526,113.47 in lease charges and damages together with $38,936.77 in late fees."  Doc. # 231-1, p. 13.  Tango's alleged default of the VLA was the basis for TIP's invoking of a "cross-default" provision in the contract, and subsequent sequestration of the 81 TRAC Lease Trailers. *Id.*  According to Tango, "Ms. DiSanto's deposition was taken by Tango to determine the basis for and the validity of the charges sought by TIP, and, in particular, to determine and make a formal record of TIP's stated basis for seeking the sequestration of the 81 TRAC Lease Trailers for the purposes of challenging the sequestration."  *Id.*

     For the deposition of Ms. DiSanto, Tango's counsel billed the following:[6]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| H.N. Cunningham III | 28.50 hours x $250 / hour | $7,125.00 |
| James C. Baker | 20.25 hours x $250 / hour | $5,062.50 |
| Scott A. Dulaney | 2.20 hours x $175 hour | $385.00 |
| **TOTAL** | | **$12,572.50**[7] |

     The undersigned agrees that an early deposition of Ms. DiSanto was warranted, as she

---

[6] Billable hours associated with this classification are identified with a mark of "Category 2" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

[7] In Tango's claim, the total fees for Category (ii) is listed as $12,187.50. *See* doc. # 231-1, p. 13.  While the undersigned is certainly not a mathematician, repeated calculations of the hours listed above have resulted in $12,572.50, not $12,187.50.

was in the best position to state the reasons for TIP's sequestration of the 81 TRAC Lease Trailers.  As stated above, Ms. DiSanto verified, under oath, that Tango was in breach of the VLA, thus providing a basis for TIP to obtain the writ of sequestration.  TIP argues that Tango's deposed Ms. DiSanto "in connection with *the issuance* of the writ."  Doc. # 241, p. 5-6 (emphasis in original).  TIP goes on to argue, again, that Tango may not recover fees associated with the deposition because Tango never sought to have the writ dissolved.  However, as described *supra*, dissolution of the writ is not a condition precedent to the recovery of attorneys' fees under La. C.C.P. 3506; a party may also recover attorneys' fees in connection with a reconventional demand.

Ms. DiSanto's earlier statements provided the basis for the sequestration of the 81 TRAC Lease Trailers, a sequestration that has now been determined to be wrongful.  As such, the undersigned is convinced that Ms. DiSanto's deposition testimony is sufficiently related to Tango's claim of wrongful sequestration.  A review of the billing records reveals the hours charged to be reasonable, *see* doc. # 236-1; as such, these amounts claimed under this category are recoverable by Tango.

> (iii)   Fees Incurred with the Oral Depositions of Phillip Raleigh, John Benoit, Mike Tillery, Jeff Cole and Peter Roy

As stated *supra*, the VLA signed by the parties herein originally governed the return procedure for all trailers rented to Tango by TIP.  A central dispute in the litigation concerned a verbal agreement outside of the VLA.  Tango contended that the verbal agreement, and not the VLA, controlled the location, timing and method of returning the first two groups of trailers to TIP.  *See* doc. # 231-1, p. 14.  TIP disputed that any such verbal agreement existed, and argued that the VLA remained operative as to the return of all trailers.  Because Tango breached the VLA, TIP invoked a "cross-default" provision of the VLA, and subsequently sequestered the

remaining 81 TRAC Lease Trailers as described *supra*.

Consistent with Tango's contentions, the District Court held that, having abrogated the original terms of the VLA and the Addendums thereto, the parties had reached a verbal agreement in February 2007 which specifically addressed the timing, manner, and location of the return of the first two groups of trailers, as well as rental payments would cease on those trailers. Doc. # 221, pp. 20-21, ¶ 16.  Further, TIP, not Tango, was in breach by failing to comply with the obligations set forth in the parties' verbal agreement.  *Id.* at ¶¶ 18, 20.

According to Tango, the persons deposed in the instant category were central to proving Tango's argument that a verbal agreement existed at all.  Specifically, Tango had to provide the Court with clear, precise and convincing evidence that the parties, by their course of conduct, entered into such an agreement.  *Id.* at ¶¶ 9-11.  In the underlying motion,

> Tango submits that the depositions of Phillip Raleigh, John Benoit, Mike Tillery, Jeff Cole and Peter Roy were taken...to assist Tango in demonstrating to the Court that the VLA did not embody the full terms and conditions of the parties' agreement relating to the return of the 384 Lease Trailers to TIP, and to establish TIP's actions were in breach of the parties' February 2007 verbal agreement, thereby negating...TIP's assertion that Tango was in default of the VLA.

Doc. # 231-1, pp. 15-16.

For the depositions of Mr. Raleigh, Mr. Benoit, Mr. Tillery, Mr. Cole and Mr. Roy, RCS, L.L.P. provided the following numbers:[8]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| H.N. Cunningham III | 66.25 hours x $250 / hour | $16,562.50 |
| James C. Baker | 19.25 hours x $250 / hour | $4,812.50 |
| John P. Tufnell | 10.50 hours x $175 / hour | $1,837.50 |
| **TOTAL** | | **$23,212.50** |

The undersigned agrees that the depositions described herein are related to Tango's

---

[8] Billable hours associated with this classification are identified with a mark of "Category 3" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

wrongful sequestration claim.  By establishing the existence of the February 2007 verbal

agreement, and TIP's breach thereof, Tango successfully demonstrated that TIP's basis for

obtaining the sequestration of the 81 TRAC Lease Trailers was invalid, as asserted in Tango's

claim for wrongful sequestration.  *See* Second Am. Compl., Mar. 17, 2009 [Doc. # 56, ¶¶ 14-15].

> (iv)    <u>Fees Incurred in Connection with Tango's Motion for Partial<br>Summary Judgment</u>

In TIP's counterclaim against Tango, TIP continually asserted that Tango was in default

of the VLA due to Tango's failure to pay for alleged property damages to the first two groups

trailers.  *See* Third Am. Countercl., Apr. 8, 2009 [Doc. # 62].  To the contrary, Tango

consistently maintained that it was not responsible for any alleged damages to the trailers.  Prior

to the trial in this matter, Tango obtained dismissal of TIP's claim for any alleged property

damage to the first two groups of trailers via:

- Judge Hicks' Memorandum Order, dated November 9, 2009 [Doc. # 143], in connection with Tango's Motion for Partial Summary Judgment [Doc. # 109];

- Judge Hicks' Memorandum Order, dated December 21, 2009 [Doc. # 155], denying TIP's Motion for Reconsideration [Doc. # 149] as to TIP's Motion for Partial Summary Judgment [Doc. # 110] (billings enumerated in (v), *infra*);

- The undersigned's Memorandum Order, dated January 25, 2010 [Doc. # 162], denying TIP's Motion for Leave to File a Fourth Amended Counterclaim [Doc. # 151] (billings enumerated in (vi), *infra*); and

- Judge Hicks' Memorandum Order, dated February 10, 2010 [Doc. # 164], granting Tango's Motion to Exclude Evidence [Doc. # 159] (billings enumerated in (vii), *infra*).

The work done by Tango in conjunction with the above rulings established that TIP's

claim for property damages to the first two groups of trailers - for which TIP claimed damages in

excess of $230,000.00, plus late charges and attorneys' fees - was an invalid claim, and not a

basis for which TIP could declare Tango to be in default of the VLA.  Accordingly, because

Tango was not in breach, the sequestration of the remaining 81 TRAC Lease Trailers was

wrongful.  Doc. # 231-1, p. 19.

For the fees associated with this category, RCS, L.L.P. provided the following billable

hours:[9]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| H.N. Cunningham III | .50 hours x $250 / hour | $125.00 |
| James C. Baker | 64.25 hours x $250 / hour | $16,062.50 |
| **TOTAL** | | **$16,187.50** |

As illustrated in the table above, Attorney Cunningham billed himself for a half an hour

of work.  According to the billing records of RCS, L.L.P., this half hour, dated September 8,

2009, was to "review [the] declaration of T. Turnbow" in support of Tango's Motion for Partial

Summary Judgment.  As evidenced by the hours listed above, Attorney Baker clearly took the

lead in preparing the motion.  As such, it would have been an appropriate exercise of billing

discretion for Attorney Cunningham, the partner, to "write off" the 30 minutes he spent

reviewing the declaration.  As such, the $125.00 he charged will be deducted from the total

amount of fees as follows:

| RCS, L.L.P. Attorneys (Revised) | | |
|---|---|---|
| H.N. Cunningham III | .50 hours x $250 / hour | No Charge |
| James C. Baker | 64.25 hours x $250 / hour | $16,062.50 |
| **TOTAL** | | **$16,062.50** |

     (v)    Fees Incurred in Connection with Tango's Opposition to TIP's
              Motion for Reconsideration of the Memorandum Order Granting
              Tango's Motion for Summary Judgment

With this category, Tango seeks to recover fees associated with its Opposition to TIP's

---

[9]  Billable hours associated with this classification are identified with a mark of "Category 4" on the billings
of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

Motion for Reconsideration.  Doc. # 149.  TIP moved for partial reconsideration of Judge Hicks'

Memorandum Order dated November 9, 2009, granting partial summary judgment to Tango.

Doc. # 143.  With its Motion for Reconsideration, TIP requested that Tango's Motion for Partial

Summary Judgment "on the interpretation of Addendum A/T be denied."  Doc. # 149, p. 2.  This

ruling, in effect, meant that TIP did not have a viable claim against Tango for the alleged

damages to the trailers that Tango had returned.

Tango's argument in support of the instant category of fees is the same as with (iv),

*supra*.  For the fees associated with this category, Tango charged the following amounts:[10]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| H.N. Cunningham III | .5 hours x $250 / hour | $125.00 |
| James C. Baker | 26.75 hours x $250 / hour | $6,687.50 |
| **TOTAL** | | **$6,812.50** |

As with the entry described *supra*, the undersigned finds that the billing of thirty minutes

of time does not exercise good billing judgment.  For this entry, Attorney Cunningham

"review[ed] TIP['s] motion for reconsideration."  The thirty minutes expended will be subtracted

from the total amount as follows:

| RCS, L.L.P. Attorneys (Revised) | | |
|---|---|---|
| H.N. Cunningham III | 0 hours x $250 / hour | No Charge |
| James C. Baker | 64.25 hours x $250 / hour | $6,687.50 |
| **TOTAL** | | **$6,687.50** |

 

(vi)    <u>Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File a Fourth Amended Counterclaim</u>

---

[10] Billable hours associated with this classification are identified with a mark of "Category 5" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

After Judge Hicks issued the aforementioned Memorandum Orders granting Tango's Motion for Partial Summary Judgment [doc. # 143] and denying TIP's Motion for Partial Summary Judgment [doc. # 144], TIP file a Motion for Leave to File a Fourth Amended Counterclaim against Tango [doc. # 151].  TIP's proposed Fourth Amended Counterclaim alleged that Tango was liable to TIP for $185,529.01 in repair charges, an amount equivalent to the total of invoices sent to Tango on November 20, 2009 for the repairs allegedly performed to over 300 of the 384 already-returned trailers. Doc. # 151, Ex. 1, ¶ 26.  The undersigned denied TIP's motion on January 25, 2010 [doc. # 162], reasoning that (1) TIP offered no explanation for its failure to disclose the additional invoices to Tango until five months after the extended discovery deadline, (2) that Tango would be substantially prejudiced if TIP were granted leave to amend because Tango reasonably limited its discovery based on TIP's assertions that TIP performed repairs to only the 81 sequestered trailers, and (3) that a continuance would not be in the best interests of justice.  Doc. # 162.

For the fees associated with this category, Tango charged the following:[11]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| James C. Baker | 29.80 hours x $250 / hour | $7,450.00 |
| **TOTAL** | | **$7,450.00** |

Tango's argument in support of the instant category of fees is identical to its position in (iv), *supra*. The undersigned, again, is inclined to agree with Tango's claim that the fees associated with the instant category are related to its wrongful sequestration claim.  Indeed, the record demonstrates that, after Judge Hicks ruled that TIP did not have a viable claim concerning allegedly damaged trailers returned by Tango to TIP, thus breaching the VLA and giving TIP

---

[11] Billable hours associated with this classification are identified with a mark of "Category 6" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

grounds for sequestration, TIP suddenly introduced numerous new billings in support of its claim that the first two groups of trailers returned by Tango to TIP were damaged, and that, as a result, the sequestration of the remaining 81 trailers was valid.  *See* Mot. for Leave to File Fourth Am. Countercl., Dec. 3, 2009 [Doc. # 151].

> (vii)   Fees Incurred in Connection with Tango's Motion to Exclude Evidence, or Alternatively, Motion to Vacate Scheduling Order and for Discovery Sanctions

With this motion, Tango sought to exclude evidence of invoices newly created by TIP well after the discovery deadline.  Doc. # 159-2, p. 9.

For the fees associated with this category, Tango charged the following amounts:[12]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| James C. Baker | 29.00 hours x $250 / hour | $7,250.00 |
| **TOTAL** | | **$7,250.00** |

Tango's argument in support of the instant category of fees is identical to its position in (iv), *supra*.  Again, immediately after Judge Hicks granted Tango's and denied TIP's Motion for Partial Summary Judgment, TIP filed a motion for leave to file a Fourth Amended Counterclaim against Tango, denied by the undersigned as described in (vi), *supra*.  In the event that the undersigned allowed TIP's Fourth Amended Counterclaim to be filed, Tango sought to exclude the evidence introduced therein, *i.e.*, newly produced invoices that allegedly evidenced repairs to over 300 of the 384 trailers involved in this matter.  Doc. # 159-2, p. 9.  Such evidence, if allowed, would have offered TIP a second chance to demonstrate that Tango was somehow liable for alleged damages to the trailers.

> (viii)   Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File Late Objections to the Magistrate Judge's

---

[12] Billable hours associated with this classification are identified with a mark of "Category 7" on the billing records of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

Memorandum Order [Doc. # 167]

As stated *supra*, on January 25, 2010, the undersigned issued a Memorandum Order denying TIP's Motion for Leave to File a Fourth Amended Counterclaim.  Doc. # 162.  On March 12, 2010, TIP filed a Motion for Leave to File Late Objections to the undersigned's Order. Doc. # 167.  While TIP admitted that it had filed no timely object to the Order, it asserted that it should not be penalized due to "oversight of its counsel."  Doc. # 167, p. 1.  The fees incurred in the instant category stem from Tango's Opposition to TIP's Motion to File Late Objections to undersigned's order.  Doc. # 168.

For the fees associated with this category, Tango charged the following amounts:[13]

| RCS, L.L.P. Attorneys | | |
|---|---|---|
| James C. Baker | 3.25 hours x $250 / hour | $812.50 |
| **TOTAL** | | **$812.50** |

TIP's Motion for Leave to File Late Objections was yet another attempt to include the newly-created invoices as part of its counterclaim against Tango.  Without the admittance of the new invoices, TIP had no viable claim against Tango for alleged trailer damages.  Without such a claim, there would have been no reason to sequester the remaining 81 TRAC Lease Trailers. Accordingly, the undersigned agrees that the instant fees are directly related to Tango's wrongful sequestration claim.

        (ix)     Fees Incurred in Connection with TIP's Motion to Preclude Tango From Presenting Testimony Related to Claim for Damages Arising Out of its Wrongful Sequestration Claim

On March 25, 2010, TIP filed a Motion in Limine, seeking to preclude Tango from offering evidence in support of its claim for lost profits and other damages arising from the

---

[13] Billable hours associated with this classification are identified with a mark of "Category 8" on the billing records of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

wrongful sequestration of the trailers.  Doc. # 170-2, p. 1.  Judge Hicks denied TIP's motion on

April 7, 2010.  Doc. # 180.  The fees associated with the instant category stem from Tango's

Opposition to the Motion in Limine, filed April 5, 2010.  Doc. # 179.

For this category, Tango charged the following fees:[14]

| Cook Yancey Attorneys | | |
|---|---|---|
| Robert Kennedy, Jr. | 5.6 hours x $150.00 / hour | $840.00 |
| Elizabeth Carmody | 1.1 hours x $135.00 / hour | $148.50 |
| **TOTAL** | | **$988.50** |

(x)    Fees Incurred in Connection with Tango's Preparation of Pretrial
Materials, Including Pretrial Conferences Apportioned to Reflect
Tango's Wrongful Sequestration Claim

With this category, Tango seeks to recover a portion of its fees for pretrial services, as

Tango's claim for wrongful sequestration was certainly not the only issue before the Court.

Tango has apportioned its fees solely related to wrongful sequestration by first determining two

numbers: one, the total amount of fees incurred in this matter; and two, the total amount of fees

related to wrongful sequestration excluding pretrial fees (claimed in the instant category) and

trial fees (claimed in xi, *infra*).

Tango submits that it was billed "approximately $763,752.00 by the law firm of Roberts,

Cunningham & Stripling, L.L.P." in the instant action.  As to Tango's claim for wrongful

sequestration, thus far the following fees have been incurred:

| Category | Amount |
|---|---|
| (i) Attorneys' Fees Readily Identifiable as Being Incurred by Tango as a Result of TIP's Wrongful Sequestration (RCS, L.L.P.) | $27,802.50 |

---

[14] Billable hours associated with these fees are identified as "Category 7(a)" in the Affidavit of Robert Kennedy, Jr. [Doc. # 236-3].

| Category | Amount |
|---|---|
| (ii) Fees Incurred in Connection with Early Oral Deposition of Ms. Christiana DiSanto (RCS, L.L.P.) | $12,572.50 |
| (iii) Fees Incurred with the Oral Depositions of Phillip Raleigh, John Benoit, Mike Tillery, Jeff Cole and Peter Roy (RCS, L.L.P.) | $23,212.50 |
| (iv) Fees Incurred in Connection with Tango's Motion for Partial Summary Judgment (RCS, L.L.P.) | $16,062.50 |
| (v) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Reconsideration of the Memorandum Order Granting Tango's Motion for Summary Judgment (RCS, L.L.P.) | $6,687.50 |
| (vi) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File a Fourth Amended Counterclaim (RCS, L.L.P.) | $7,450.00 |
| (vii) Fees Incurred in Connection with Tango's Motion to Exclude Evidence, or Alternatively, Motion to Vacate Scheduling Order and for Discovery Sanctions (RCS, L.L.P.) | $7,250.00 |
| (viii) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File Late Objections to the Magistrate Judge's Memorandum Order [Doc. # 167] (RCS, L.L.P.) | $812.50 |
| (ix) Fees Incurred in Connection with TIP's Motion to Preclude Tango From Presenting Testimony Related to Claim for Damages Arising Out of its Wrongful Sequestration Claim (RCS, L.L.P.) | $988.50 |
| **TOTAL** | **$102,838.50** |

RCS, L.L.P. submits that an appropriate method for determining the percentage of pretrial work that can be fairly apportioned to its claim for wrongful sequestration is to divide the amount of fees attributed to the wrongful sequestration thus far by the total amount of fees incurred in this matter.  In other words, in order to determine what percentage of pretrial fees stem from the wrongful sequestration claim, divide $102,838.50 by $763,752.00:

$102,838.50 (attorneys' fees stemming from wrongful sequestration claimed thus far)

$763,752.00 (total amount of attorneys' fees billed by Roberts, Cunningham & Stripling, L.L.P.)

Thus, RCS, L.L.P. submits that approximately **13.46 %** of attorneys' fees incurred in trial preparation and actual trial time should be attributed to TIP's wrongful sequestration of the 81 TRAC Lease Trailers.

For this category, RCS, L.L.P. charged the following fees (with 13.46% of the total apportioned to the wrongful sequestration claim):[15]

| RCS, L.L.P. Attorneys | Hours and Rates | Total | 13.46% |
|---|---|---|---|
| H.N. Cunningham III | 169.25 hours x $250 / hour | $42,312.50 | $5,695.26 |
| James C. Baker | 494.30 hours x $250 / hour | $123,575.00 | $16,633.20 |
| John P. Tufnell | 135.30 hours x $175 / hour | $23,677.50 | $3,186.99 |
| Scott A. Delaney | 149.50 hours x $175 / hour | $26,162.50 | $3,521.47 |
| **TOTAL** | | **$215,727.50[16]** | **$29,036.92** |

As to the firm of Cook Yancey, Attorney Kennedy submits that ten percent of his total trial time should be apportioned to the wrongful sequestration claim.  Doc. # 236-3, p. 9.

| Cook Yancey Attorneys | Hours and Rates | Total | 10.00% |
|---|---|---|---|
| Robert Kennedy, Jr. | 50.3 hours x $150 / hour | $7,545.00 | **$754.50** |

    (xi)    <u>Fees Incurred in Connection with Tango's Trial of the Matter, Apportioned to Reflect Tango's Wrongful Sequestration Claim</u>

As with the pretrial fees incurred by Tango, discussed immediately *supra* in (x), the fees in the instant category have been apportioned to accurately reflect the time at trial solely devoted to Tango's wrongful sequestration claim.

For the fees associated with this category, RCS, L.L.P. submits the following numbers:[17]

| RCS, L.L.P. Attorneys | Hours and Rates | Total | 13.46% |
|---|---|---|---|
| H.N. Cunningham III | 73.75 hours x $250 / hour | $18,437.50 | $2,481.69 |
| James C. Baker | 110.75 hours x $250 / hour | $27,687.50 | $3,726.74 |

---

[15] Billable hours associated with these fees are identified as "Category 9" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

[16] According to Tango's claim, the total attorneys' fees for this category (before the 13.46% apportionment) is $212,727.50.  Again, repeated calculations have resulted in $215,727.50, a difference of $3,000.00.

[17] Billable hours associated with these costs are identified with a mark of "Category 10" on the billings of Roberts, Cunningham, & Stripling, L.L.P. [Doc. # 236-1].

| TOTAL | | $46,125.00 | $6,208.43 |
|---|---|---|---|

Again, the law firm of Cook Yancey apportioned the work done at ten percent [doc. # 236-3, p. 9]:

| Cook Yancey Attorneys | Hours and Rates | Total | 10.00% |
|---|---|---|---|
| Robert Kennedy, Jr. | 94.6 hours x $150 / hour | $14,190.00 | $1,419.00 |

Fees associated with trial fees include all trial appearances, as well as travel time.

> (xii)   Fees Incurred in Connection with Tango's Application for an Award of Attorneys' Fees Incurred as a Result of TIP's Wrongful Sequestration

Finally, the last category concerns fees incurred in preparing the instant motion, and affidavits and exhibits thereto.

For the fees associated with this category, Tango provides the following amounts:[18]

| RCS, L.L.P. Attorneys | Hours and Rates | Total |
|---|---|---|
| James C. Baker | 54.5 hours x $250 / hour | $13,625.00 |

| Cook Yancey Attorneys | Hours and Rates | Total |
|---|---|---|
| Robert Kennedy, Jr. | 6.5 hours x $150 / hour[19] | $975 |

**C.   Final Calculation of Attorneys' Fees to be Awarded to Tango**

The undersigned finds that, with the exceptions and deductions noted *supra*, taken as a whole, Tango's counsel has exercised reasonable billing discretion.  Taking into account the factors listed in Louisiana Rule of Professional Conduct 1.5(a), the undersigned notes that the instant case required numerous court appearances and motion practice.  Additionally, it is not lost

---

[18] Time sheets associated with this category are provided in Exhibit "B(2)" to the Declaration of H.N. Cunningham III [Doc. # 236-2].

[19] In his Affidavit, Attorney Kennedy notes that he "expended approximately six and one-half hours working on the motion for attorneys' fees and supporting documentation;" however, the chart he provides charges 8.0 hours expended.

on the undersigned that TIP was a very litigious opponent in the underlying action.

The amount of money involved is another factor that may be considered under Rule 1.5(a).  At the outset of this litigation, TIP claimed that Tango owed TIP more than a half a million dollars; Tango, on the other hand, did not seek anything other than a judgment stating that Tango was <u>not</u> liable to TIP for that amount.  Tango was ultimately successful in this regard, another factor that may be considered under Rule 1.5(a).  Prior to trial, Tango was successful in its Motion for Partial Summary Judgment and various Motions in Limine.

The intricacies of this case also may be considered under Rule 1.5(a).  This breach of contract dispute involved both Pennsylvania and Louisiana law, and many issues were before the Court at the outset of litigation.  Tango's counsel's billing records illustrate a zealous practice by the attorneys involved, ultimately resulting in a victory for Tango.

Therefore, the final calculation of attorneys' fees, with the subtractions already discussed, is as follows:

| Category | Amount |
|---|---|
| (i) Attorneys' Fees Readily Identifiable as Being Incurred by Tango as a Result of TIP's Wrongful Sequestration (RCS, L.L.P.) | $27,802.50 |
| (i) Attorneys' Fees Readily Identifiable as Being Incurred by Tango as a Result of TIP's Wrongful Sequestration (Cook Yancey) | $3,919.50 |
| (ii) Fees Incurred in Connection with Early Oral Deposition of Ms. Christiana DiSanto (RCS, L.L.P.) | $12,572.50 |
| (iii) Fees Incurred with the Oral Depositions of Phillip Raleigh, John Benoit, Mike Tillery, Jeff Cole and Peter Roy (RCS, L.L.P.) | $23,212.50 |
| (iv) Fees Incurred in Connection with Tango's Motion for Partial Summary Judgment (RCS, L.L.P.) | $16,062.50 |
| (v) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Reconsideration of the Memorandum Order Granting Tango's Motion for Summary Judgment (RCS, L.L.P.) | $6,687.50 |
| (vi) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File a Fourth Amended Counterclaim (RCS, L.L.P.) | $7,450.00 |

| Category | Amount |
|---|---|
| (vii) Fees Incurred in Connection with Tango's Motion to Exclude Evidence, or Alternatively, Motion to Vacate Scheduling Order and for Discovery Sanctions (RCS, L.L.P.) | $7,250.00 |
| (viii) Fees Incurred in Connection with Tango's Opposition to TIP's Motion for Leave to File Late Objections to the Magistrate Judge's Memorandum Order [Doc. # 167] (RCS, L.L.P.) | $812.50 |
| (ix) Fees Incurred in Connection with TIP's Motion to Preclude Tango From Presenting Testimony Related to Claim for Damages Arising Out of its Wrongful Sequestration Claim (RCS, L.L.P.) | $988.50 |
| (x) Fees Incurred in Connection with Tango's Preparation of Pretrial Materials, Including Pretrial Conferences, Apportioned to Reflect Tango's Wrongful Sequestration Claim (RCS, L.L.P.) | $29,036.92 |
| (x) Fees Incurred in Connection with Tango's Preparation of Pretrial Materials, Including Pretrial Conferences, Apportioned to Reflect Tango's Wrongful Sequestration Claim (Cook Yancey) | $754.50 |
| (xi) Fees Incurred in Connection with Tango's Trial of the Matter, Apportioned to Reflect Tango's Wrongful Sequestration Claim (RCS, L.L.P.) | $6,208.43 |
| (xi) Fees Incurred in Connection with Tango's Trial of the Matter, Apportioned to Reflect Tango's Wrongful Sequestration Claim (Cook Yancey) | $1,419.00 |
| (xii) Fees Incurred in Connection with Tango's Application for an Award of Attorneys' Fees Incurred as a Result of TIP's Wrongful Sequestration (RCS, L.L.P.) | $13,625.00 |
| (xii) Fees Incurred in Connection with Tango's Application for an Award of Attorneys' Fees Incurred as a Result of TIP's Wrongful Sequestration (Cook Yancey) | $975.00 |
| **TOTAL** | **$158,776.85** |

For the foregoing reasons,

## **CONCLUSION**

IT IS RECOMMENDED that defendant Transport International Pool, Inc.'s motion for deferral of Consideration of Plaintiff's Motion for Attorneys' Fees [doc. # 240] be **DENIED**.

IT IS FURTHER RECOMMENDED that plaintiff Tango Transport, L.L.C., be awarded reasonable attorneys' fees in the amount of **$158,776.85**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 15th day of March, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE